THE STATE OF NEBRASKA, ON THE RELATION OF NEAL WALTERS, V. HENRY OLESON, RESPONDENT.

**Removal from Office.** The trial and ousting from office of a sheriff, for corruption, under paragraph 5 of sec. 1, art. II., chap. 18, Compiled Statutes, by the board of county commissioners, is not the exercise of judicial power, nor of the power of impeachment; but of a quasi political and administrative power, not denied to such bodies by the constitution.

ORIGINAL action in the nature of *quo warranto*.

*Wilber F. Bryant and Fred J. Fox,* for relator, cited: *Attorney General v. McDonald,* 3 Wis., 703. *Gough v. Dorsey,* 27 Wis., 131. *Smith et al. v. Odell,* 1 Pinney, 451. *Gilbert v. Priest,* 60 Barb. (N. Y.), 448. *Collanan v. Judd et al.,* 23 Wis., 343. *In re Sherman M. Booth,* 3 Wis., 81.

*R. E. W. Spargur,* for respondent, cited: *Hamlin v. Meadville,* 6 Neb., 223. *State v. Buffalo County,* 6 Neb., 460. *Doody v. Vaughn,* 7 Neb., 31. *South Platte Land Co. v. Buffalo Co.,* 7 Neb., 258. 44 Pa. St., 332. Cooley Const. Lim., 276. 37 N. Y., 518. 13 Mich., 481. 6 Kan., 430. Dill. Mun. Corp. (3d ed.), §§ 240 and 267 and cases cited. 2 Kent Com., 297. Bouv. Law Dict., 157 and cases cited.

COBB, J.

This is a suit in the nature of an application for a writ of quo warranto by Neal Walters, who claims to be enti-

tled to the office of sheriff of Knox county, against Henry Oleson, the actual incumbent of said office.

It appears from the record that the relator was duly elected to said office at the general election of 1881, and entered upon the duties of said office and continued to discharge them until on or about the twenty-ninth day of December, 1882, when a complaint was made before the board of county commissioners of Knox county charging the said relator with official misdemeanors in his said office of sheriff of Knox county; that upon a trial of the said charge the said relator was found guilty by said board, and a judgment rendered by said board removing and ousting him from the said office.

Section 1 of article II. of chap. 17 of the Comp. Statutes, provides as follows:

"Sec. 1.   All county officers, including justices of the peace, may be charged, tried, and removed from office for official misdemeanors in the manner and for the causes following:   *First*, For habitual or willful neglect of duty. *Second*, For gross partiality.   *Third*, For oppression. *Fourth*, For extortion.   *Fifth*, For corruption.   *Sixth*, For willful mal-administration in office.   *Seventh*, For conviction of a felony.   *Eighth*, For habitual drunkenness."

"Sec. 2.   Any person may make such charge, and the board of commissioners shall have exclusive original jurisdiction thereof by a summons."

It was under these provisions and for the fifth cause as therein numbered that the relator was charged, tried, and removed from office.   He urges now that the above provisions are in conflict with the provisions of sec. 1 of article VI. of the constitution of the state, which provides as follows:

"Sec. 1.   The judicial power of this state shall be vested in a supreme court, district courts, county courts, justices of the peace, police magistrates, and in such other courts

inferior to the district courts as may be created by law for cities and incorporated towns."

It cannot be denied, I think, that under the English system impeachment, or more properly speaking the trial of an impeached person, is an exercise of judicial power. "In that kingdom," says Story (Story on the Constitution, 790), all the King's subjects, whether peers or commoners, are impeachable in parliament; though it is asserted that commoners cannot now be impeached for capital offenses, but for misdemeanors only," etc.   But in this country impeachment has always been confined to civil office holders, and while in one sense it is as much a judicial inquiry to to try a man for accepting a bribe, where the penalty upon conviction is only that of deprivation from holding an office, as though it were his incarceration in the penitentiary, yet there is a sense in which the object of such inquiry would in the latter case be conceded to be judicial, while in the former it well might be designated as administrative or political.

The constitution of the United States provides—art. III., sec. 1: "The judicial power of the United States shall be vested in one supreme court and in such inferior courts as the congress may from time to time ordain and establish." Yet section 3 of art. I. of the same instrument provides that: "The senate shall have the sole power to try all impeachments."   Now then it must be that the framers of that instrument understood the trying of an impeachment as something else than the exercise of judicial power.   The same may be said of the framers of the constitutions of nearly every state of the union, as in nearly every case they have lodged the judicial power in one department of the state government, but imposed the duty of trying impeachments upon another and different one.   Our own state, however, furnishes an exception to this general rule.   Here, while the two houses of the legislature in joint convention possess the sole power of impeachment, that is of presenting

articles of impeachment, yet the trial must take place before a court composed of members of the judicial department. Whatever may have been the intention or understanding of the framers of our constitution in that respect, I think that by the provision now under consideration they imposed upon the judges a duty not judicial, and which might properly have been left here, as otherwhere within our common country, with one of the legislative bodies.

The provision of the constitution of the State of Illinois, vesting the judicial power in the courts, is substantially the same as that of our own constitution, above quoted. Under it the case of *Donahue v. County of Will* (100 Ills., 94), came before the supreme court of that state. In that case a county treasurer was charged and tried before the board of county supervisors for gross misconduct in office, found guilty, and removed from office. The case was taken to the circuit court on *certiorari*, where the action of the board of county supervisors was affirmed; whereupon the cause was taken to the supreme court on error. In that, case as in the one at bar, the sole question was: Had the county board legal authority and constitutional power to hear and determine, and remove the relator from office? The provisions of the Illinois statute on the subject were substantially the same as those of our own; so that the question there as here was one of constitutional power, whether the courts of law under the one section of the statute, or the court of impeachment under the other, had not the exclusive jurisdiction of cases of this kind. The opinion of the court by Mr. Justice Walker is quite exhaustive, citing cases from the courts of last resort of New York, Wisconsin, Michigan, Texas and Massachusetts, and many older Illinois cases, and reaching a conclusion sustaining the action of the county board. I think upon a careful consideration of the whole subject, that it is safe to follow this precedent, though that the case is entirely free from doubt cannot be said.

The writ of quo warranto must be denied. By the
Court,

WRIT DENIED.