## *In re* RAHRER.

*(Circuit Court, D. Kansas.* October 17, 1890.)

INTOXICATING LIQUORS—INTERSTATE COMMERCE—RETROACTIVE EFFECT OF WILSON
ACT.

Act Cong. Aug. 8, 1890, known as the "Wilson Act," and declaring "that all fermented, distilled, or other intoxicating liquors or liquids, transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent, and in the same manner, as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise," is permissive, and not mandatory, upon the different states, and requires additional legislation to be had by a state to bring the provisions of the act into operation within the state.

This is an application for the writ of *habeas corpus.* From the agreed statement of facts in this case it appears that the petitioner, Charles A. Rahrer, was the agent at Topeka, Kan., of Maynard, Hopkins & Co., citizens of the state of Missouri, doing a general wholesale business at Kansas City, Mo., in the sale of intoxicating liquors. The petitioner was appointed agent of said house in June, 1890, and from that time to the date of his arrest, on the 9th day of August, 1890, he continued, as said agent, to sell said liquors at Topeka, Kan., in the original package, as imported, and not otherwise. For a sale thus made by him on the 9th day of August, 1890, he was arrested by the state authorities, for a violation of what is known as the prohibitory law of the state, and he petitions this court for his discharge therefrom, on the ground that he is restrained of his liberty in violation of his rights under the federal constitution. By order of the United States circuit judge, Hon. JOHN F. PHILIPS, judge of the United States district court for the western district of Missouri, sat with Judge FOSTER on the hearing of this petition.

*David Overmyer* and *Hazen & Isenhart,* for petitioner.

*L. B. Kellogg,* Atty. Gen., and *R. B. Welch,* Co. Atty., for respondent.

PHILIPS and FOSTER, JJ. Two principal questions have been discussed by counsel in this case: *First,* as to the constitutionality of what is known as the "Wilson Bill," passed by congress on the 8th day of August, 1890; and, *second,* whether, if said bill be valid, the existing prohibitory law of the state of Kansas applies, or is it needful that additional legislation should be had by the state to bring into action in the state the provisions of the Wilson bill. Under the view taken of the last question, we deem it unnecessary to enter upon any discussion of the first proposition, as with or without the constitutionality of the Wilson bill the result to the petitioner is the same. The first section of the prohibitory law of Kansas is as follows: "Any person or persons who shall manufacture, sell, or barter in spirituous, malt, vinous, fermented, or other intoxicating liquors shall be guilty of a misdemeanor," etc. Gen. St. 1889, par. 2521. Under the decision of the supreme court of the

United States in *Leisy* v. *Hardin*, 135 U. S. 100, 10 Sup. Ct. Rep. 681, this statute, in so far as it attempted to prohibit the sale of intoxicating liquors imported into the state, and sold by the importer or his agent in the original package, was inoperative and void, being in conflict with section 8, subd. 3, art. 1, of the federal constitution, which places the power exclusively in congress to regulate commerce with foreign nations and among the states. Incident to this decision, congress, on the 8th day of August, 1890, enacted the Wilson bill, which declares·

"That all fermented, distilled, or other intoxicating liquors or liquids transported into any state or territory, or remaining therein for use, consumption, sale, or storage therein, shall, upon arrival in such state or territory, be subject to the operation and effect of the laws of such state or territory enacted in the exercise of its police powers, to the same extent, and in the same manner. as though such liquids or liquors had been produced in such state or territory, and shall not be exempt therefrom by reason of being introduced therein in original packages or otherwise."

It is not claimed nor pretended by the attorneys for the state that the petitioner, previous to the passage of the Wilson bill, was engaged in a business violative of any law of the state; but they do claim that, immediately after the passage of said bill by congress, the petitioner's business became and is a violation of the prohibitory law of the state. So that the proposition stands in this form: On the 7th day of August, 1890, sales made by the petitioner were permissible and lawful under the constitution of the United States, the prohibitory law of the state to the contrary notwithstanding; therefore, if on the 9th day of August, 1890, the same act of the defendant is taken from under the protection of the constitution, and is a violation of the same prohibitory law of the state, the conclusion would seem to be inevitable that this changed condition of liability is because of the enactment of congress on the 8th day of August, 1890. In brief, the contention of the state is that the act of congress enlarged the scope and operation of the act of the state legislature, making that which was a legitimate business one day a crime the next, not under any law of congress, but against the law of the state. There is nothing in the wording of the act implying that congress assumed such a power, or intended to give such effect to this enactment. At the time congress passed the Wilson bill, it was well known and recognized that the supreme court had decided that such a state prohibitory law was void in so far as the dealer in imported liquors in the original package was concerned; in other words, there was no law, and could be no law, in existence, making such a business a crime. It cannot be assumed that congress desired to introduce into the present police laws of the state an article or subject hitherto not included by those laws. How could congress know that the people of all or any of the states on the 8th day of August 1890, desired to have such subject or article embraced in their police laws? The contention of counsel for the state is that it is for the several states themselves to determine the scope and purpose of their police laws, and congress has not undertaken to arrogate to itself any power or control over that subject. In employing the words,

"shall be subject to the operation of the laws of the state," congress did not use them in a mandatory, but in a permissive, sense. The most ardent and enthusiastic advocate of a strong central government would spurn the idea that congress assumed to dictate, or convey a mandate to the several states in the matter of the exercise of their police powers. On the contrary, the Wilson bill left it to the free and untrameled action of the several states to determine whether they would or would not include within their police laws this particular article of commerce. Every state in the Union probably has upon its statutes some police regulation of the traffic in intoxicating liquors. These statutes, as a rule, exempt from their operation, either in express terms or by implication, imported liquors and their sale in original packages. In some of the states the exception was expressed, as in the Iowa prohibitory law prior to 1888, and the old New York law of 1855, and in all cases where not expressly reserved the law of the land, as declared by the supreme judicial tribunal, supplies the exception; thus indicating the general *consensus* that hitherto it was not recognized as among the police powers of the state to regulate or interdict among the states the traffic in imported liquors. The decision in *Leisy* v. *Hardin, supra*, but emphasizes this fact and principle. The prohibitory law of the state of Kansas where it touched upon interstate commerce was no law at all at the time of this enactment nor since. Judge COOLEY says:

"The term 'unconstitutional law,' as employed in American jurisprudence, is a misnomer, and implies a contradiction; that enactment, which is opposed to the constitution, being in fact no law at all." Cooley, Const. Lim. 3.

Again, at page 188, this same author says:

"When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it. Contracts which depend upon it for their construction are void. It constitutes a protection to no one who has acted under it, and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void *in toto* is true also as to any part of an act which is found to be unconstitutional, and which consequently is to be regarded as having never at any time been passed and in legal force."

How then can the act of congress in question have the effect and operation claimed for it by the attorneys for the state? For it must be kept in mind that a legislative act in conflict with the constitution is not only illegal or voidable, but it is absolutely void. It is as if never enacted, and no subsequent change of the constitution removing the restriction could validate it or breathe into it the breath of life. For illustration: Section 10, art. 1, of the federal constitution declares that "no state shall pass any bill of attainder, *ex post facto* laws, or law impairing the obligation of contracts." Suppose a state should pass any of these prohibited acts, and after its passage the constitution should be amended by the assent of the requisite number of states and the foregoing section dropped altogether, so that there was no longer any restriction on the states in this particular. Would any one contend that a prior enactment in the face of the constitution, dead at the time of its

enactment for want of life-giving power, would at once arise from its tomb, and become a living, actual, lawful thing? Or suppose the legislature of Kansas in these times of imputed financial distress should enact a law providing that, in all cases of judicial sales of real estate hereafter made on foreclosure of mortgages, there should be a stay of execution for one year after judgment. Such a law would seem fair on its face, and would be in general terms like that of a prohibitory law of the state. The courts unquestionably would hold that as to judgments rendered or mortgages executed prior to such enactments the statute was inoperative and void, because it impaired the obligation of contracts, and was in violation of section 10, art. 1, of the constitution; although it might be held to be a valid law as to subsequent contracts, good in part and bad in part. Now, suppose the constitution should be amended, and section 10 should be excluded, could it be maintained that this act of the legislature would become a valid law as to prior contracts without further legislation? Where is the distinction between the supposed case and the one at bar? In either case the legislature undertook to legislate on a matter forbidden to it by the constitution,—in the one case prohibited in terms, and in the other taken away and denied to it by a delegation of all power over the subject-matter to congress. If the constitutionality of the Wilson bill is to be upheld upon the theory, as claimed by its advocates in the debate thereon in the senate of the United States, and in the argument at this hearing, that congress, in the exercise of its power to regulate commerce among the states and with foreign nations, simply decided or declared that its jurisdiction should be confined to certain subjects-matter of commerce, or that certain subjects-matter and things which may be considered subjects of commerce should thereafter be excluded from its jurisdiction, under the commercial clause of the constitution, and the traffic in intoxicating liquors should thereafter be classified and remitted to the subjects within the police power of the state, such a law, under every rule of construction, must be prospective in its operation. And it must further be conceded that, as the right of the state to treat such an article of commerce as subject to laws passed by the state in the exercise of the police power comes for the first time and alone from the enactment of the Wilson bill, until the state passes a law thereafter forbidding such traffic, it has never exercised the power or the discretion, call it what you may, lodged in it by congress. From this conclusion we see no logical escape. The operation and scope of criminal laws should not be enlarged by implication, but they should be strictly construed; and, where there is any well-founded doubt as to any act being a public offense, especially one not *malum in se*, it should not be declared such, but should rather be construed in favor of the liberty of the citizen.

It follows that the petitioner is entitled to be discharged, and it is accordingly so ordered.