### STATE ex rel. LEE v. CHANEY et al.

No 507.     Opinion Filed May 12, 1910.

(102 Pac. 133.)

1.  **COURTS—Constitutional Law—State Courts—Territorial Decisions—Stare Decisis—Determination of Constitutional Questions.** The Supreme Court of this state took and possesses any and all jurisdiction of the Supreme Court of the territory of Oklahoma, except as otherwise provided in the Constitution, and has the same power and right as said court to review any of its decisions for the purpose of ascertaining whether or not such decision was erroneous in declaring a territorial statute invalid and should be permitted to stand or be overruled, as being repugnant to the organic act.

    (a)  If this court determines that such decision was erroneous, and such act was not in fact repugnant to the organic act, it should exercise the power and perform the duty of overruling such decision, unless prevented by the rule of stare decisis, by declaring that such act was not in conflict with the organic act, and consequently in force in the territory at the time the state was admitted into the Union, and, if not in conflict with the Constitution or locally inapplicable, continued in force in the state.

2.  **CONSTITUTIONAL LAW—Encroachment on Judiciary—Investing City Council With Judicial Power.** Section 439, Wilson's Rev. & Ann. St. 1903 (section 626, St. Okla. 1893), providing for the removal of city marshals, chiefs of police, and police officers, is repugnant to section 9, Organic Act (26 Stat. 85, c. 182, approved May 2 1890), following **Christy v. City of Kingfisher,** 13 Okla. 585, 76 Pac. 135.

3.  **STATUTES—Territorial—Invalidity—Effect.** If an act of the Legislature of the Territory of Oklahoma was repugnant to the organic act, it was invalid and of no force whatever, and did not become effective under the state government, although such act may not have been repugnant to the provisions of the Constitution of this state.

(Syllabus by the Court.)

*Error from District Court, Pittsburg County; P. B. Cole, Judge.*

Mandamus by the State, on the relation of R. C. Lee, against George M. Chaney, as Mayor, and others, as Councilmen, of the City of McAlester, and others. Judgment for defendants, and relator brings error. Reversed and remanded.

On the 5th day of October, A. D. 1908, the state of Oklahoma, on the relation of R. C. Lee, plaintiff in error in this court, commenced its action against George M. Chaney, as mayor, E. C. Million, A. W. Jones, S. Crowl, C. H. Hess, J. L. Farmer, A. S. McKennon, S. A. Zike, J. H. Tucker, R. B. Coleman, J. M. Lathim, J. R. Hurley, and T. J. Ferris, as members of the city council, J. M. Gannaway, as city clerk, Ed Hocker, as city treasurer, of the city of McAlester, and E. T. Gabbert, defendants in error in this court.

Plaintiff alleged: That on the 2d day of April, A. D. 1907, the relator was duly and legally elected to the office of chief of police of the city of McAlester, Okla., by the qualified voters of said city, and on the 8th day of April, A. D. 1907, duly qualified and entered upon the discharge of his duties as chief of police of said city; that from said date until the 27th day of July, A. D. 1908, the relator continued to hold said office and to perform the duties thereof, but upon the date last above mentioned the said mayor and city council did wrongfully, illegally, and without right, attempt to deprive the relator of said office and the emoluments thereof, by then and there passing a resolution by said council suspending said relator from further duties as such chief of police until certain charges which had been preferred against him could be examined by said council; that such action of said mayor and city council in passing said resolution suspending said relator was illegal and void, as said city council, under the laws of the state of Oklahoma, had no right or power to pass such a resolution; that afterwards a hearing was had before said mayor and city council upon the charges which had been preferred against said relator, and upon final hearing there of said city council by a majority

vote, to wit, on the 26th day of August,, A. D. 1908, pretended to ·remove the relator from said office and declared said office vacant, which proceedings and action of said city council and· mayor was illegal and void, for the reason that said mayor and city council had no power or authority under the laws of the state of Oklahoma to declare said office vacant and to remove said relator therefrom, or not deprive relator thereof, and no jurisdiction to hear, determine, and pass upon said charges and suspend and remove from office a chief of police elected by the voters of said city.

Relator further represented: That said charges were untrue and not sustained by the evidence before said council; that he is now, and has at all times since the date of his said election been, the duly elected, qualified, and acting chief of police of said city of McAlester, and is now, and has at all times since his election been, endeavoring to exercise the functions of said office, but that said mayor and city council have wrongfully, wilfully, and illegally, and without right, since the 27th day of July A. D. 1908, prevented the relator from discharging the duties of said office, refused to recognize him as chief of police of said city, and refused to permit him to draw his salary as such officer; that the salary of said office at the time of relator's election and at the time of his pretended suspension and expulsion from office, and now is, $100 per month, fixed and provided for by ordinances of said city; that the said mayor and. city council have refused to consider and allow said salary, though repeatedly demanded so to do by said relator; that the defendants the city clerk and treasurer of said city have refused and failed to issue a warrant to the relator for said salary and to cash the same, it being their duty under the law so to do; that there is now and has been continuously since said suspension money in the hands of said city treasurer to the credit of the fund for the use of said council, and not otherwise appropriated, sufficient to pay the relator's salary; that there is now due said relator from said city as salary as such chief of police the sum of $200, being salary for the months of

August and September, 1908; and that said salary continues at the rate of $100 per month, until the —— day of April, A. D. 1909.

Whereupon the relator prayed the court to issue a writ of mandamus in his favor against the said mayor and city council of said city, directing them to permit relator, without interference on their part, to exercise the rights, duties, and functions of said office and to recognize him as such officer, to consider and allow and order issued to him a voucher in the sum of $200 for salary for the months of August and September, 1908, now due, and that there be issued 'thereafter a voucher for each month's salary as same becomes due to said relator until the expiration of his term of office, and commanding the said J. M. Gannaway, clerk of said city, to deliver his warrant on the treasurer of said city in favor of relator when allowed and authorized by the mayor and city council, for such amounts, and commanding said Ed Hocker, treasurer of said city, to pay said warrants when issued and presented by the relator for said sums; and against the said E. T. Gabbert commanding him to refrain from usurping the office and duties of said office of chief of police, and from interfering in any way with said relator in the performance of said duties of said office, and to do such other things in that behalf as the law requires.

The relator had due and reasonable notice and a copy of the specific charges filed against him before said council, and of the time for hearing, and appeared before said council and answered said charges, being represented by the same counsel at such hearing that he is represented by in this court. On the 5th day of October, A. D. 1908, the judge of the district court, on application of the relator, caused to issue an alternative writ of mandamus, and on the 8th day of October, A. D. 1908, the defendants filed their response thereto, setting up the preferment of the charges against relator, and his trial and removal from office, alleging that said charges were true. On the same day judgment

was rendered in favor of the defendants, and the cause is now properly before this court for review.

*Stuart & Gordon, Fuller & Potter,* and *Brewer & Andrews,* for plaintiff in error, cited: *Chrisly v. Kingfisher,* 13 Okla. 585; *People v. Moyan,* 79 N. Y. 558; *Arkle v. Board of Com'rs,* 41 W. Va. 471; *People ex rel. v. Stuart,* 74 Mich. 411; *Dullam v. Wilson,* 53 Mich. 392; *Board of Com'rs v. Johnson,* 124 Ind. 145; *Speed v. Common Council of Detroit* (Mich.) 22 L. R. A. 842.

*B. P. Hammond* and *P. S. Lester,* for defendant in error, cited: *State v. Hawkins,* 44 Ohio St. 98; *Terry. of Dak. v. Cox,* 6 Dak. 501; *Donohue v. Will,* 100 Ill. 99; *Taft v. Adams,* 3 Gray, 126; *Ex parte Wiley,* 54 Ala. 226; *Thompson v. Holt,* 52 Ala.; *State v. Frazier,* 48 Ga. 137; *Patten v. Vaughan,* 39 Ark. 211; *Connor v. Mayor of New York,* 1 Selden, 285; *Long v. Mayor,* 81 N. Y. 425; *People v. Whitlock,* 92 N. Y. 193; Wilson's Rev. & Ann. St. Okla. 1903, par. 357.

WILLIAMS, J. (after stating the facts as above). The following questions are presented for consideration on this record:

(1) Has the Supreme Court of this state the right to exercise the power to re-examine a decision of the Supreme Court of the territory of Oklahoma construing an act of the Legislature of Oklahoma as being repugnant to the organic act, and determine whether or not such act was, as a matter of fact and law, in conflict with the organic act, and, if said decision was erroneous, to overrule the same?

(2) Was section 439, Wilson's Rev. & Ann. St. 1903 (section 626, St. Okla. 1893), repugnant to section 9, Organic Act (26 Stat. 85, c. 182, approved May 2, 1890)?

(3) Was said section extended to and did it remain in force in the state of Oklahoma by virtue of section 2 of the Schedule to the Constitution?

1. Section 17 of the Enabling Act (Act June 16, 1906, c. 3335, 34 Stat. 276), as amended March 4, 1907 (34 Stat. pt. 1, p. 1286, c. 2911; Bunn's Ed. § 543), provides that all cases,

proceedings, and matters, civil or criminal, pending in the Supreme Court of the territory of Oklahoma or in the United States Court of Appeals in the Indian Territory, shall be proceeded with held, and determined by the Supreme Court of this state as the successor of the Supreme Court of the Territory of Oklahoma and the United States Court of Appeals of the Indian Territory. Section 18 of said act (34 Stat. pt. 1, p. 277, c. 3335; Bunn's Ed. § 535) provides that the Supreme Court of the state of Oklahoma shall be successor of the Supreme Court of the territory of Oklahoma, and take and possess any and all jurisdiction as such, not therein otherwise specially provided for.   Section 21 of said act (34 Stat. pt. 1, p. 277, c. 3335) provides:

"That the constitutional convention may by ordinance provide for the election of officers for a full state government, including members of the Legislature. * * * Such state government shall remain in abeyance until the state shall be admitted into the Union and the election for state officers held, as provided in this act. * * * And the officers of the state government formed in pursuance of said Constitution, as provided by said constitutional convention, shall proceed to exercise all the functions of such state officers; and all laws in force in the territory of Oklahoma at the time of the admission of said state into the Union shall be in force throughout said state, except as modified or changed by this act or by the Constitution of the state, and the laws of the United States not locally inapplicable shall have the same force and effect within said state as elsewhere within the United States."

The following ordinance was also adopted by the constitutional convention on the 22d day of April, A. D. 1907:

"Be it ordained by the constitutional convention of the proposed state of Oklahoma, that said constitutional convention do, by this ordinance irrevocable, accept the terms and conditions of an act of the Congress of the United States, entitled 'An act to enable the people of Oklahoma and the Indian Territory to form a Constitution and state government and be admitted into the Union on an equal footing with the original states; and to enable the people of New Mexico and of Arizona to form a Constitution and state government and be admitted into the Union on an equal

footing with the original states,' approved June the sixteenth, Anno Domini, nineteen hundred and six."

In the Schedule to the Constitution it is said:

"In order that no inconvenience may arise by ·reason of the change from the forms of government now existing in the Indian Territory and in the territory of Oklahoma, it is hereby declared as follows:

"Section 1. No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of government, but all shall continue as if no change in the forms of government had taken place. * * *

"Sec. 2. All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitations or are altered ·or repealed by law."

In the case of *Frick v Oats,* 20 Okla. 473, 94 Pac. 686, this court, in construing these identical provisions as to a case pending at the time the state was admitted into the Union, said:

"* * * It would be incongruous with the spirit of those provisions to hold that, as this appeal was perfected to the Supreme Court of Oklahoma Territory before the admission of this state into the Union, at which time that court was not bound by the construction laid down in that case, and could overrule the same if erroneous, that since statehood this litigant lost that right; and that owing to the change in the forms of government this court, although successor to that court, had not that power, and could not if it would, do the same thing. This, in effect, it would be compelled to hold if the construction laid down in that case is binding on this court."

The court further said:

"Clearly these laws cannot be said to be adopted or re-enacted from anywhere, but were already 'in force.' If, then, they were not adopted or re-enacted, but remained 'in force,' this statute would not carry with it the construction placed upon it in *Greenville National Bank v. Evans-Snyder-Buell Co.,* 9 Okla. 393, 60 Pac. 261."

Whilst it is true, as a rule, that the state government, unless it is otherwise provided in the Constitution, becomes destruc-

tive of the preceding territorial government, yet, in the event that the Constitution so provides, the machinery and laws of the territorial government may be continued in force within the new state. *Winslow v. France,* 20 Okla. 303, 94 Pac. 689; *Benner v. Porter,* 9 How. 235, 13 L. Ed. 119. Such was the case in the Constitution of Oklahoma as to the laws in force in the territory at the time of the admission of the state into the Union, except as the same were repugnant to the Constitution or locally inapplicable.

A court in construing a statute or a provision of a Constitution should adopt that sense which harmonizes best with the context, and which promotes in the fullest manner the apparent policy and object of the Legislature or the framers. *Nance v. Southern Ry. Co.* (N. C.) 63 S. E. 116; *Commonwealth v. Kimball,* 41 Mass. 370. When we consider sections 17, 18, and 21 of the Enabling Act in connection with the provisions of the Schedule to the Constitution and ordinances hereinbefore set out and referred to, the irresistible conclusion follows that it was not only the purpose of the Congress of the United States, as expressed in the Enabling Act, but also of the framers of the Constitution, as declared in the Schedule, that the machinery of the government of the territory of Oklahoma, except as to its officers, including the laws, except where the same were repugnant to the Constitution, or locally inapplicable, in force throughout Oklahoma Territory when it was admitted into the Union, should be in force in said state on its admission, and so remain until changed by operation of law or expire by their own limitation. And with the laws continued in force and the state Supreme Court, as the successor of the Supreme Court of the Territory of Oklahoma, taking and possessing any and all jurisdiction of said court, except as specifically otherwise provided in the Constitution, can there be any question but that the Supreme Court of this state occupies the same relation as the Supreme Court of said territory in interpreting and construing the laws of the same?

There is a marked difference where a statute is borrowed

or re-enacted from another state, between continuing laws in force over the same territory and extending the same over other territory embraced in the new state. Under the territory of Oklahoma, if the Supreme Court erroneously decided that section 439, Wilson's Rev. & Ann. St. 1903, *supra,* was repugnant to the provisions of the organic act, when in fact it was not, that court had the power, as was its duty, unless the rule of *stare decisis* intervened, to correct its error by overruling and setting aside such holding and declaring the fact as well as the right as to such law.

It is suggested by counsel for plaintiff in error that an unconstitutional act, or an act of the Oklahoma Legislature repugnant to the provisions of the organic act, was of no effect or force whatever, either by any provision of the Schedule to the Constitution or the Enabling Act. That is true. But the fact that the Supreme Court of the territory of Oklahoma may have held such an act in conflict with the organic act, and therefore invalid, if as a matter of fact and law, when correctly interpreted, it was not repugnant thereto, does not destroy the force of such act as a law except that judicially it suspends its enforcement as long as such erroneous rule stands. The true test is that if an act of the Oklahoma Legislature was repugnant to the organic act it was void and of no force whatever; and the fact that the Supreme Court of the territory of Oklahoma may have held that it was void is not conclusive upon this court, but it may re-examine the decision and determine whether or not as a matter of fact such act was repugnant thereto. See *Pierce et al. v. Pierce,* 46 Ind. 86.

2. Section 9 of the organic act provides that the judicial power of said territory shall be vested in a Supreme Court, district courts, probate courts, and justices of the peace, and if said section 439 vests judicial power in the mayor and city council of a city it is in conflict therewith. It is insisted by the plaintiff in error that the case of *Christy v. City of Kingfisher,* 13 Okla. 586, 76 Pac. 135, settles this question. The Supreme Court of the territory of Oklahoma in that case, in construing this identical section, held that the right of the mayor and city council to

try a city marshal under said section should be denied, because the procedure called for judicial action, and not the exercise of political or administrative power or action. The cases of: *Page v. Hardin,* 47 Ky. (8 B. Mon.) 652; *State ex rel. Police Com'rs v. Pritchard et al.,* 36 N. J. Law, 101; *Hedges v. Com'rs of Lewis and Clark Counties,* 4 Mont. 280, 1 Pac. 748; *Arkle v. Board of Com'rs,* 41 W. Va. 471, 23 S. E. 804; *Fuller v. Ellis,* 98 Mich. 96, 57 N. W. 33; *People ex rel. Clay v. Stuart,* 74 Mich. 411, 41 N. W. 1091, 16 Am. St. Rep. 644; *Dullam v. Willson,* 53 Mich. 392, 19 N. W. 112, 51 Am. Rep. 128; *People v. Nichols,* 79 N. Y. 582; *Commonwealth v. Slifer,* 25 Pa. 27, 64 Am. Dec. 680; *Board of Aldermen of Denver v. Darrow,* 13 Colo. 460, 22 Pac. 784, 16 Am. St. Rep. 215; *State ex rel. Denison v. City of St. Louis et al.,* 90 Mo. 19, 1 S. W. 757; *Board of Com'rs of Knox Co. v. Johnson,* 124 Ind. 145, 24 N. E. 148, 7 L. R. A. 684, 19 Am. St. Rep. 88; *State ex rel. Carson v. Harrison,* 113 Ind. 435, 16 N. E. 384, 3 Am. St. Rep. 663—support the rule announced in that case.

There is considerable authority, however, upholding the converse proposition. *Territory of Dakota ex rel. French v. Cox et al.,* 6 Dak. 501; *Donahue v. County of Will,* 100 Ill. 94; *State ex rel. Walters v. Oleson,* 15 Neb. 247, 18 N. W. 45; *State v. Hawkins,* 44 Ohio St. 98, 5 N. E. 228. In the last case is a very strong dissenting opinion, in which other authorities relied on to support the doctrine that the act is administrative and not judicial are reviewed. On page 127 of 44 Ohio St., and page 243 of 5 N. E., Mr. Justice Follett, in delivering his dissent, says:

"The answers to the charges being true, what was left of the charge of official misconduct? If anything was left, the accused must be *found guilty* of the 'official misconduct' charged. When guilt is denied, as here, such finding must involve a *trial* by some competent tribunal, where there is a charge, testimony, deliberation, and determination. This power is judicial. 'Judicial includes the deciding upon a question of fact, viz., whether the act has been committed; and upon a question of law, viz., whether the injury was material.' Here it was official misconduct. See *People v. Keeler,* 32 Hun. 570. It is judicial to hear, adjudge, and

condemn. *People v. Keeler,* 99 N. Y. 463, 484, 2 N. E. 615, 52 Am. Rep. 49."

The cases of: *Patton v. Vaughn,* 39 Ark. 211; *State v. Doherty,* 25 La. Ann. 119, 13 Am. Rep. 131; *In re Cooper,* 22 N. Y. 74; *Keenan v. Perry,* 24 Tex. 253; *Taft v. Adams,* 3 Gray (Mass.) 126; *Ex parte Wiley,* 54 Ala. 226; *Thompson v. Holt,* 52 Ala. 491; *State v. Frazier,* 48 Ga. 137; *State v. McGarry,* 21 Wis. 496; *State v. Prince,* 45 Wis. 610—were specifically referred to and considered in said dissenting opinion, and sought to be distinguished in such a way as to at least weaken the contention that they are authorities in point.

In the Christy Case no reference is made to the case of *Cameron v. Parker,* 2 Okla. 277, 28 Pac. 14, which cites and approves the case of *Territory ex rel. French v. Cox, supra.* The opinion in that case was delivered by Judge Scott, concurred in by Bierer and McAtee, Justices; Dale, Chief Justice, and Burford, Justice, dissenting. The Cameron Case related to an appointive officer, and did not involve section 439, or a statute similar thereto. However, it is not essential for us here to determine whether or not that case should be followed.

Further, by section 23, art. 3, Senate Bill No. 61, known as the "enforcing act" (Sess. Laws 1907-08, p. 611, c. 69), provision is made for the removal of marshals and police officers who may not diligently enforce the provisions of said act, by filing a petition in the district court of the county wherein such officer resides, in the name of the state on the relation of any citizen thereof, upon the recommendation of a grand jury, grand juror, or on the relation of the board of county commissioners, or an attorney appointed by the Governor under the provisions of said act, summons to issue, and proceedings had therein to final judgment as in other civil cases. It is provided, however, that, when an order is made suspending such officer from his duties as provided in said act, he shall be entitled to demand and have a trial within 10 days, if the court be in session, and, if the court be not in session, then the accused shall be entitled to demand and have a

trial within the first 10 days of the next term. A change of judge or change of venue shall be allowed as in other cases. Pending the trial of said cause, application may be made by the relator, or by the attorney appointed by the Governor under the provisions of said act, to any judge of the Supreme Court or of the district court wherein such cause is pending, for an order suspending such officer from his office during the pendency of said suit, and after reasonable notice to the defendant of such application and an opportunity to show cause, if any there be, in opposition thereto, if it shall appear to the satisfaction of such judge that such officer has fiailed, neglected, or refused to perform the duties required of him by law, then it shall be the duty of such judge to enter an order suspending such officer from office until final trial of the cause, and in such order said judge shall appoint a proper person to hold such office and perform all the duties thereof during the suspension. It is provided that appeals shall be allowed in such cases as in other civil cases. The First Legislature of this state, in providing for the removal of city marshals and police officers, thus prescribing a judicial hearing, evidently recognized and approved the rule of the Christy Case; for under our Constitution judicial power may be conferred upon a mayor and city council. See section 1, art. 7 (Bunn's Ed. § 169) Const..

3. If said statute (section 439, Wilson's Rev. & Ann. St. 1903) was repugnant to the organic act, and consequently void and never in force in the territory of Oklahoma, it did not extend to or remain in force in the state of Oklahoma after the admission of the territory into the Union as a part thereof, although such act would not have been repugnanat to the provisions of the Constitution of the state. In the case of *Dullman v. Willson,* 53 Mich. 392, 19 N. W. 114, 51 Am. Rep. 138, the court said:

"The information alleges that the removal was made in pursuance of the statute, and from the fact that the executive order removing the respondent follows the language of the statute, instead of the Constitution, and fills the vacancy until the next session of the Legislature, instead of the unexpired term, I am convinced that the action was had under the statute. But if the

power exists under the Constitution, it is immaterial that a mis-recital is made as to its source, and would not invalidate the exercise of the power. I am satisfied that the statute furnishes no valid basis for the power of removal, because repugnant to the Constitution of 1835, which vested no judicial power in the Governor. The statute, being void, was not validated by the amendment of 1862, and the question depends solely upon the constitutional amendment of 1862."

See, also, *Seneca Mining Co. v. Secretary of State,* 82 Mich. 573, 47 N. W. 25, 9 L. R. A. 770; *Banaz v. Smith,* 133 Cal. 102, 65 Pac. 309; *In re Rahrer* (C. C.) 43 Fed. 556, 10 L. R. A. 444; *Wilkerson v. Rahrer,* 140 U. S. 545, 11 Sup Ct. 865, 35 L. Ed. 572; *In re Spickler* (C. C.) 43 Fed. 653, 10 L. R. A. 446; *In re Van Vliet* (C. C.) 43 Fed. 761, 10 L. R. A. 451.

When we consider the eminent authorities supporting the Christy Case, to wit, the highest courts of Michigan, at the head of which was Chief Justice Cooley, New Jersey, New York, West Virginia, Indiana, Pennsylvania, and other states, we do not feel that under the circumstances we would be justifiable in overruling the same.

The judgment of the lower court is, accordingly, reversed and remanded, with instructions to proceed in accordance with this opinion.

All the Justices concur.