Delaware County ex rel. Carver et al., County Com'rs, v. Hogan.

DELAWARE COUNTY *ex rel.* CARVER *et al. County Com'rs,*
v. HOGAN, *Sheriff, et al.*

No. 4125.    Opinion Filed October 15, 1912.

Rehearing Denied November 15, 1912.

(127 Pac. 492.)

1.    **MANDAMUS—Decisions Reviewable—Final Judgment.** From a final judgment of a judge of the district court made at chambers on a trial on its merits of an application for a writ of mandamus, appeal lies to the Supreme Court.

2.    **COUNTIES — County Seat — Removal — "Place."** The word "place," as used in section 6, art. 17, par. 324, Williams' Ann. Const. Okla., means a definite locality, competent to be voted upon for the county seat of a county.

3.    **SAME—Situation of Buildings.** A certain ten acres marked by metes and bounds, designated as a place and called Jay, was selected by the electors of a county as the location for the county seat. Thereafter the same, with other outlying contiguous territory, was duly incorporated in a town site, bearing the same name. The board of county commissioners of the county made a contract for the erection of a building commodious and suitable in all ways for the accommodation of the officers and public records of the said county which was located within the incorporated limits of the said town, and near to but not within the original ten acres denominated as a place at which had been located the county seat. Held that, on the refusal of the balance of the county officers to occupy with their records the said building so selected, mandamus would lie at the instance of the board of county commissioners to compel the same.

(Syllabus by the Court.)

Kane, J., dissenting in part.

*Error from District Court, Delaware County;*
*John H. Pitchford, Judge.*

Mandamus by the County of Delaware, on the relation of W. E. Carver and Tom Dial, county commissioners, to George W. Hogan, sheriff of Delaware county, and others. From a judgment refusing the writ, relators bring error. Reversed and remanded, with instructions.

Delaware County ex rel. Carver et al., County Com'rs, v. Hogan.

*Ad. V. Coppedge, Stuart, Cruce & Gilbert,* and *Curtis & Pitchford,* for plaintiffs in error.

*W. H. Kornegay* and *E. B. Hunt,* for defendants in error.

DUNN, J. This case presents error from the judgment of the district court in and for Delaware county, denying plaintiffs in error a writ of mandamus in an action begun by them in said court. From the judgment, which was rendered by the judge at chambers within his district but in an adjoining county to the one wherein the case was filed, an appeal has been prosecuted by petition in error and case-made to this court.

On the oral argument the question was raised as to the jurisdiction of this court to entertain the appeal. That the same exists is in effect decided in the cases of *Wenner v. Board of Education of City of Perry,* 25 Okla. 515, 106 Pac. 821, and *Thompson et al. v. State ex rel. Cooksey et al.,* 25 Okla. 741, 108 Pac. 398. The judge of the district court at chambers had jurisdiction to try and determine the issues in the case presented, and the judgment which denied the relief demanded was final, from which an appeal lies to this court. Plaintiffs prosecute this case for Delaware county by virtue of being a majority of the board of county commissioners thereof. The defendants are the other officers of that county. The controversy arises out of the location of the county courthouse, or rather a building rented by the board to be used as such. In a contest over its location this court, May 28, 1911, rendered judgment declaring that a place called Jay had received the majority of the legal votes cast at an election held for the purpose of determining the permanent county seat of that county. *Town of Grove v. Haskell et al.,* 31 Okla. 77, 116 Pac. 805.

From the record it appears that the place called Jay was not a city or town, but was a plat of ground of ten acres, named and designated by its owners and submitted by them as a place as one of the competitors. It is made further to appear that prior to the time when the records and officers were removed from Grove, the temporary county seat, to such place, and on

August 28, 1911, the board of county commissioners by resolution duly passed spread upon their records the following:

"Whereas, by virtue of law the county seat of Delaware county has been located at Jay in said county, and whereas it is necessary that arrangements be made to remove the offices, business, and records of said county from Grove in said county to Jay, and whereas, it is the duty of this board in the removal of the offices, business, and records of said county to place the same in such building or buildings in Jay, where the records may be protected from damage or destruction from fire, water, or other agencies, and whereas in the judgment of this board, at the present time there are no buildings in the town of Jay in which this board would be justified in permitting the records of this county to be placed therein for the reason that there are no buildings large enough and constructed in such a manner as to be reasonably fireproof to protect the important records of this county from loss or destruction by fire or other agencies, and whereas, one Wm. J. Creekmore has filed with the county clerk of this county his written proposal, which is set out in full above, and whereas under the terms of said proposal said Wm. J. Creekmore agrees upon certain conditions to erect and construct an adequate building in the incorporated town of Jay, in which the county offices and records of this county may be moved with safety and with practically no danger of loss by fire or water, and whereas it appears to us and in our judgment that it is to the best interest of the taxpayers of this county that this board accept said proposal and enter into the same as an agreement between Delaware county and the said Wm. J. Creekmore: Now, therefore, be it resolved that we, the board of county commissioners of Delaware county by virtue of the power and authority conferred upon us by the laws of this state, do hereby accept said proposal and the terms and conditions thereof, hereby agree, bind, and obligate ourselves and the county of Delaware to take possession and lease the said parts and portions of said building when the same is completed for the purpose of locating therein the offices, business, and records of said county."

Thereafter it appears that the said place was, with certain adjoining territory, known as the Creekmore addition, incorporated as a town and named Jay. The proceedings before the board of county commissioners for that purpose were held on the 6th day of November, 1911. It seems that, after the decision above mentioned, the records of the county and county officers

were removed from the town of Grove to that portion of the town of Jay embraced within the ten acre plat. Thereafter, and on the 24th day of January, 1912, the board passed and spread upon its records the following resolution:

"Be it known that on this 24th day of January, 1912, the following resolution was offered by Thomas Dial, a member of the board of county commissioners of Delaware county, state of Oklahoma: Be it resolved by the board of county commissioners that whereas, Jay has been named as the permanent county seat of Delaware county, and whereas, a place where said records are now located is an unsafe place and not fit for the regular work of the officers of the county, and whereas, the records as now located are in danger of being lost or destroyed, that said records shall be located in Jay and in the concrete building situated on lots 1 and 2 in block 32 in the Creekmore addition to Jay, and the sheriff of said Delaware county is hereby directed to move and assist in moving said records from the place where they are now located in Jay to said building. It is further resolved that these minutes be spread upon the records and they shall be authority and direction to the sheriff to make said removal."

It appears that, in accordance with the contract made and the foregoing resolution, the records were removed to the said concrete building, which was within the corporate limits of the town, but not on said ten acres. Thereafter the Adjutant General of the state, acting under and by virtue of an order issued by the Governor of the state, removed the said records from the said building and returned them to the place where they had been originally taken by the officers on their removal from Grove. Proceedings thereafter taken in reference to the said order and action of the Adjutant General are reported in the case of *Fluke et al. v. Canton,* 31 Okla. 718, 123 Pac. 1049. The present action was thereafter begun on the 9th day of May, 1912, by a majority of the board of county commissioners praying that a writ of mandamus be directed to these defendants, being the other officers of the said county, commanding and requiring them to move to the concrete building selected by the said board and establish therein their offices, and there to take with them the records and paraphernalia of every kind pertaining thereto. It is on ac-

count of the denial of the said writ by the judge of the district court that this action is prosecuted.

It is contended by counsel for plaintiffs that the board of county commissioners were acting within the authority conferred upon them under the terms of section 1684, Comp. Laws 1909, in passing the resolutions, and in selecting the building which was selected. The statute upon which they rely is quoted at length in their brief, and is as follows:·

"In any county where there is no courthouse or jail erected by the county, or where those erected have not sufficient capacity, it shall be the duty of the said board of county commissioners to provide for court room, jail, and offices for the following named officers: Sheriff, treasurer, register of deeds, county clerk, county attorney, superintendent of public schools, and judge of probate, to be furnished by the county in a suitable building or buildings, for the lowest rent to be obtained at the county seat, or to secure and occupy suitable rooms at a free rent within the limits of the county seat or any of the additions thereto, until such county builds a courthouse."

The criticism made by counsel for the defendants upon the existence of the power here sought to be exercised is that the buildings to be selected must, under the authority granted, be within the limits of the original ten acres; also, that under and by virtue of section 6, art. 17, of the Constitution, the towns named as county seats of the different counties of the state were to be and remain the county seats of the respective counties until changed by a vote of the qualified electors of the county, and that, where this was done, the town which received a majority of all the votes cast at the election should be thereafter the county seat; and, in view of the fact that at the election held the place called Jay received a majority of the votes cast, that the same thereupon became the county seat, and the board of county commissioners lacked the authority to contract for the use of any building outside of those limits, for the reason that this constituted a change of the county seat. The argument based on the foregoing objections all goes to the proposition of the location of the permanent courthouse for the county. That situation is not involved in this controversy. The county not having erected any courthouse or jail, and having no building within the ten acres

denominated a place, at which by a vote of the electors of the county the county seat was located, was compelled by force of circumstances to provide for a suitable building for the temporary use of the county officials. So far as the original ten acres is concerned, under the resolutions passed by the board, there is no building there that can be occupied. This being true, we think under the power given in the statute quoted that the board had the authority to provide for renting the building in question and for its occupancy as temporary quarters for the county officials. This building, although not located within the limits of the ten acres, is located at or near it and within the incorporation of the town, which embraces the ten acres. The latitude allowed by the statute was provided, in our judgment, to meet just such contingencies as have here arisen. This construction and conclusion on our part is in keeping and in harmony with the apparent policy and object of the Legislature in framing this statute, and our duty under these circumstances is as stated by this court· in the case of *State ex rel. Lee v. Chaney et al.,* 23 Okla. 788, 102 Pac. 133, to be that:

"A court in construing a statute or a provision of a Constitution should adopt that sense which harmonizes best with the context, and which promotes in the fullest manner the apparent policy and object of the Legislature or the framers. *Nance v. So. Ry. Co.* [149 N. C. 366], 63 S. E. 116; *Commonwealth v. Kimball,* 24 Pick. [Mass.] 370."

The judgment of the judge of the district court is accordingly reversed, and the cause is remanded, with instructions to set the same aside and enter one in accordance with the views expressed in this opinion.

TURNER, C. J., and HAYES, J., concur; WILLIAMS, J., not participating. KANE, J., dissents from the reasoning.