STATE of Oklahoma ex rel. Paul J. LIVINGSTON, Plaintiff in Error,

v.

James A. MAXWELL, Mayor, Robert Mawhinney, Commissioner of Fire and Police, Guy Hall, Jr., Commissioner of Streets and Public Property, Robert Leikam, Commissioner of Waterworks & Sewerage, successors to George Norvell, Mayor, William Peterson, Commissioner of Fire & Police, Pat McGuire, Commissioner of Waterworks & Sewerage, and Fay Young, Commissioner of Finance & Revenue of the City of Tulsa, Oklahoma, Defendants in Error.

No. 38700.

Supreme Court of Oklahoma.

May 10, 1960.

Rehearing Denied July 19, 1960.

Milton W. Hardy of Hardy & Hardy, Tulsa, for plaintiff in error.

Charles E. Norman, City Atty., Henry Kolbus, Luther P. Lane, John W. Sublett, Finis Smith, Darven L. Brown, Asst. City Attys., Tulsa, for defendants in error.

BLACKBIRD, Justice.

This is an appeal from a judgment of the district court denying plaintiff in error, referred to in the trial court and herein as relator, a peremptory writ of mandamus against the officials of the City of Tulsa, appearing herein as defendants in error, but hereinafter referred to as respondents. Relator sought the writ to compel respondents to take the necessary action to accomplish payment to him of funds appropriated for the salary of Tulsa's Police Chief from the date of relator's alleged unlawful suspension from that office in February, 1957, until May 8, 1957, (which was the end of the one-year term of office for which he had been appointed) and to pay him the salary of a Lieutenant of Detectives on said City's police force, beginning the latter date.

When the relator was appointed Tulsa's Chief of Police by its then mayor, the Honorable George E. Norvell, with the approval of said City's Board of City Commissioners, on May 8, 1956, he was already employed, and classified, in said City's police department as a Lieutenant. Thereafter during his tenure as Police Chief, he was, on February 21, 1957, indicted, along with fifteen other persons, on charges of conspiracy to violate the federal law pertaining to importation of intoxicating liquor into this State (18 U.S.C.A. § 1262). On the same day, and at the direction of Mayor Norvell, the City's Civil Service Board performed what is referred to as "personnel action", suspending relator "indefinitely" from the office of Police Chief. He was notified of his suspension by letter the Mayor addressed to him the same day, and the next day, February 22, the suspension was approved by the City's Board of Commissioners. Also, on February 22, Jay L. Jones, the City's then Commissioner of Fire and Police, addressed the following letter to relator:

"This letter is to notify you that you as Lieutenant of Detectives and during

the suspension as Chief of Police are hereby assigned as the Special Investigator for the office of the Police and Fire Commissioner."

After relator's above-described "suspension" and until the one-year term, for which he had been appointed Chief, ended on May 7, 1957, the duties of that office were performed by one George O'Neil, with the title of "Acting Chief of Police." For the succeeding term beginning May 8, 1957, one Joe McGuire was appointed Tulsa's Chief of Police, and, when the present action was filed in early 1958, he still held the office.

After being charged, by indictment with conspiring to violate the above-cited federal liquor law, relator was convicted on said charges. Said conviction was affirmed by the United States Circuit Court of Appeals on January 6, 1958 (Jones et al. v. United States, 10 Cir., 251 F.2d 288) and certiorari was denied by the U. S. Supreme Court on March 31, 1958 (Jones v. United States, 356 U.S. 919, 78 S.Ct. 703, 2 L.Ed.2d 715).

In the meantime, apparently at some time before the cited final determination of his criminal prosecution, relator applied for a police pension. In denying his said application on or about February 11, 1958, the pension board apparently accepted the city attorney's opinion that he was ineligible, and not in pension status, because he had neither resigned nor been discharged from the police department.

On February 12, 1958, relator addressed a letter to the Mayor and Board of Commissioners citing the fact that no salary warrants had been issued him for services rendered the City in any capacity since February 21, 1957, and challenging the validity of his suspension from the position of Police Chief. Though in said letter, relator represented himself as then being a member of the police force, acting in the capacity of Lieutenant of Detectives, he claimed this position, not from February 22, 1957—the date of the hereinbefore quoted letter from Commissioner Jones—but from approximately 2½ months later,

or May 8, 1957, beginning the next day after expiration of the one-year term, for which he was originally appointed the Police Chief. His letter, among other things, asserted the claim, he still advances, for police chief's salary until the latter date, and another claim for a lieutenant of detective's salary thereafter.

On February 18th, thereafter, the City's Civil Service Board purported to take "personnel action" discharging relator from the position of Police Chief, effective retroactively as of February 21, 1957, (the date of his previous suspension) "for conduct unbecoming an officer", and citing his hereinbefore mentioned conviction in federal court. Despite this, relator thereafter wrote a letter, dated April 11, 1958, to the Mayor and Board of Commissioners tendering his resignation as Police Lieutenant, and stating that the purpose of his letter was to enable his wife to obtain his pension during his "absence". (This last word apparently had reference to the period during which he would be away from Tulsa serving out his sentence in federal prison, pursuant to the hereinbefore mentioned conviction. His period of incarceration was from May 10, to November 25, 1958).

By the time the last mentioned events had occurred, the court, in the present action, had already issued its alternative writ of mandamus against respondents, upon relator's sworn application. The trial to determine whether relator would be granted a peremptory writ was not held until March, 1959, and resulted in the hereinbefore mentioned judgment of denial, from which relator herein appeals.

In the briefs relator and respondents have filed herein, many arguments are made concerning various facts hereinbefore mentioned and others of lesser importance. We think many of them are irrelevant, however, for as we view relator's asserted right to compel payment to him of the Tulsa Police Chief's salary until May 8, 1957, it hinges primarily upon two questions:

(1). Was his suspension from that office valid?

(2). If so, has he shown authority for paying him the salary of Police Chief during the period of such suspension?

In connection with the first question, relator refers throughout his brief to the Tulsa Police Chief's position as a "charter" office. The clear implication from this is that said office was created, or provided for, through Tulsa's City Charter, and, accordingly, that the method of securing it, is governed exclusively by said charter and/or said City's ordinances. Finding no provision in these enactments expressly contemplating suspension from said position, relator cites State ex rel. Lee v. Chaney, 23 Okl. 788, 102 P. 133, for the statement in his initial brief to the effect that his attempted suspension was without authority of law and beyond the power or jurisdiction of the Mayor; and cites "Eddie Shields v. City of Tulsa", Shields v. State, 184 Okl. 618, 89 P.2d 756, in argument "6" of his reply brief, that suspension from the office "must be brought under statutory proceedings." We do not think either of these arguments tenable.

 It is undisputed that under the Tulsa charter and ordinances, said City's Chief of Police is appointed by the Mayor, subject to confirmation by the Board of Commissioners, for a one-year term, beginning the second Tuesday in May of each year. In Jones v. Bayless, 208 Okl. 270, 255 P.2d 506, 512, we pointed out that the power to remove a policeman is an implied part of the power to appoint him, and stated that "where the controlling charter, ordinances or statutes contain no provision to the contrary, such power is within the discretion of the appointing authority * * *". The power to suspend, a lesser power, is likewise included in the power to appoint, but unlike the power to remove is not affected by the fact that the position may be for a fixed term, or definite tenure. As in the case of one who denies the appointing authority's power of removal (Jones v. Bayless, supra) one who claims that said authority is not vested with the power of suspension under the general rule of im-

plication, has the burden of establishing his said claim. Relator has failed to cite any municipal, or state, enactment, or decision of this court, which expressly deprives Tulsa's Mayor and Board of Commissioners of the power to suspend its Chief of Police for cause. The "statutory proceedings", to which relator says he refers in his argument, are those provided for in Tit. 22 O.S.1951 §§ 1181–1196, both inclusive. The cited statutes, ostensibly applying to officers " * * * elected or appointed * * * under the laws of the State * * *" (Sec. 1181), contain a provision authorizing suspension by the Judge, " * * * pending investigation * * *" where the complaint prays for it. Assuming, without deciding, that this statute applies to the Chief of Police of a chartered city (appointed as provided in its charter or ordinances, as he was) relator fails to cite any decision or provision of law—and we know of none—to the effect that the cited statutory method of suspension is exclusive. On the other hand, one of the cases he primarily relies upon, State ex rel. Burns v. Linn, 49 Okl. 526, 153 P. 826, Ann.Cas.1918B, 139, in which no mention is made of suspension (as distinguished from removal) recognizes that, as to removal, the authority of a charter city's governing body may be concurrent with the jurisdiction of the court. There is strong reason in practical considerations for recognizing that the appointing authority has the power of suspending an officer it has appointed. As said in State ex rel. Campbell v. Police Com'rs, 16 Mo.App. 48, 50, quoted in City of Tulsa v. Parrish, Okl., 333 P.2d 564, 570:

"The suspension of an officer pending his trial for misconduct, so far as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation. His retention at such a time of all the advantages and opportunities afforded by official position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to

694

seriously embarrass his triors in their approaches to the ends of justice."

■ In view of the foregoing, and the fact that relator's suspension was not attempted by the Mayor acting alone, but that said official's action was approved, or confirmed, by the Board of Comissioners (which latter fact relator's argument apparently ignores, or seeks to minimize) in the manner in which relator was appointed, we cannot uphold his argument that he was unlawfully suspended.

■ Nor has relator shown how a Police Chief can be entitled to the salary of that position for that period of his term during which he is suspended, without his suspension ever having been nullified. In City of Tulsa v. Parrish, supra, we denied a suspended policeman's claim for salary during the period of his suspension, where, before termination of his employment, he was never restored to active duty in that position or capacity. Here, as in that case, the officer claiming the salary does not assert he was entitled to it during the period of his suspension, irrespective of whether or not the claimed suspension was valid. We have already determined that he has failed to discharge his burden of showing it was invalid, as a predicate for the relief he prayed for in regard to the salary of Police Chief. In the cited case, we, in effect, held that a policeman could not recover for salary during the period he was suspended and did not perform the duties of that position, where his suspension was never countermanded or nullified. Relator has shown no reason why said ruling should not apply with equal force to this case. There, we distinguished "suspension" cases from "removal" cases like Board of County Commissioners of Oklahoma County v. Litton, Okl., 315 P.2d 239, 64 A.L.R.2d 1365 involving different situations which relator cites as applicable to various phases of his argument. Accordingly, as we view the matter, relator has failed to show any clear legal right to salary as Tulsa's Police Chief during the period of his suspension from that office between February 22, 1957, and May 7, 1957, the end of the term for which he was appointed to it.

■ Nor has he shown any clear legal right to the salary of a Lieutenant of Detectives subsequent to that date. He does not claim to have been holding that position (rather than that of Police Chief, prior to that date) merely by reason of Commissioner Jones' having written him the hereinbefore quoted letter, nor on the basis of any other purported authority or action; nor does he claim to have held the position of Chief and Lieutenant, concurrently. He speaks of having "reverted" (automatically) to the job of Lieutenant of Detectives at the end of the term for which he was appointed Chief, but he points to no authority, or basis, for such reversion. It may be inferred, from the argument herein, that the so-called "charter" office of Tulsa's Chief of Police, is not (like "employees" or "members" of the Police Department) included in Tulsa's "classified service"; and it is not shown how, when a policeman leaves this service, to accept appointment as Chief, he re-enters it ipso facto (or without action on the part of any city official) at the end of his term as Chief. The only Tulsa City Ordinance that has come to our attention authorizing the transfer of a "policeman" or "employee", of said City's police department, from one "employment" or "duty" to another, specifically excepts the Chief of Police from its operation; and relator points to no such ordinance, rule or regulation, that applies to that officer. Nor do the facts revealed herein show any authorization action taken by any employing, or appointing, authority sufficient to confer upon relator the position of a Lieutenant of Detectives in his status at the end of his term as Chief (whatever that status was), when he admittedly could no longer claim the title of Chief.

In view of our conclusion that there is not shown herein any clear legal right on the part of relator either to the salary he claims as Chief, or to the salary he claims as Lieutenant of Detectives, the trial court properly denied the writ. See Updegraff v. .

Gary, Okl., 298 P.2d 404, and other authorities cited in State Highway Commission v. Green-Boots Construction Co., 199 Okl. 477, 180 P.2d 209, at page 217. Its judgment is therefore affirmed.

DAVISON, C. J., and WILLIAMS, V. C. J., and JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.