## CITY OF TULSA v. SUTTLE.

No. 27140. June 22, 1937.

Rehearing Denied Feb. 21, 1938.

Application for Leave to File Second Petition for Rehearing Denied March 22, 1938.

H. O. Bland, Milton W. Hardy, and E. M. Gallaher, for plaintiff in error.

Wm. Blake and Hudson & Hudson, for defendant in error.

BUSBY, J. This is an appeal from a judgment of the district court of Tulsa county on a directed verdict. B. V. Suttle sued the city of Tulsa. Okla., to recover salary as police detective officer, alleged to be due from May 7, 1934, to the date of filing the petition. An amended petition was later filed. The plaintiff alleged

that he was appointed in 1932 as regular police officer in the detective department in the city of Tulsa and alleges that he is still such officer. It is further alleged that on May 7, 1934, the fire and police commissioner, O. W. Hoop, undertook to discharge him without authority of law and in violation of the provisions of the city charter of said city; that his salary was fixed by city ordinance No. 3977 of the city of Tulsa; that he has duly presented his claim for payment and that same has been refused.

The defendant filed its answer alleging, among other defenses, that plaintiff's dismissal was legal and not in violation of the city charter; that the dismissal was an economy measure; that plaintiff did not qualify as an officer as required by law, and denied that ordinance No. 3977 was in full force and effect during the period of time alleged in plaintiff's petition, and that plaintiff had abandoned the office. It was further alleged that the court had no jurisdiction of the cause for the reason that plaintiff was attempting to try title to office by means of an action other than quo warranto on relation of the state of Oklahoma. During the course of trial the defendant was allowed to further amend its answer, alleging that the position which had been occupied by the plaintiff was legally abolished, and that by the terms of ordinance No. 4042, passed and approved, the police department was reorganized, and, further, that said office complained of was abolished by such ordinance.

At the close of the testimony, the court directed a verdict in favor of the plaintiff for salary from the date of his dismissal to the effective date of ordinance No. 4042. Both parties have appealed to this court.

The parties will be referred to as they appeared in the trial court.

The first proportion presented and argued in defendant's brief is that this action is an attempt to regain an office occupied by another incumbent in an action other than in the nature of quo warranto.

The second proposition presented and argued is that when an officer has been removed and another appointed, mandamus cannot be invoked to compel the muniments of the office until title to the office has been determined in a direct proceeding brought for that purpose.

Much of the defendant's brief has been devoted to argument on these two propositions. There is no allegation in the plaintiff's petition that could put in issue either of these questions. The only allegation in defendant's answer, relating thereto, was that the court had no jurisdiction of the cause for the reason that plaintiff was attempting to try title to office by means of an action other than quo warranto. The question of the plaintiff invoking mandamus to compel the muniments of the office was neither alleged by the plaintiff nor the defendant in the pleadings. The action is a plain suit to recover salary, wherein it is alleged that an attempted dismissal was not legal and that plaintiff still holds the office. No question is presented here to try the rights of office or to put anyone out of office. The only parties before the court are the plaintiff, in a suit for a money judgment, and the defendant city of Tulsa. It is quite true that if this court should hold that plaintiff was entitled to all of the salary sued for, it would be equivalent to holding that plaintiff was never legally discharged.

Defendant's third contention is that when the appropriations for the police department are shown to be insufficient to pay all members of the police force, the city commissioners have authority to discharge a member of the police force, and that plaintiff was legally discharged for economy reasons.

The plaintiff in answer thereto contends that under the civil service provisions of the city charter of Tulsa, an officer cannot be discharged except for cause and in the manner and procedure prescribed in section 30, article 2, of the city charter. The plaintiff further contends that his office, being created by ordinance, could not be abolished by motion or resolution. The plaintiff admits that the defendant city had a right at any time to reduce the police department, but that it cannot be lawfully done in violation of the city charter.

Both plaintiff and defendant quote section 30 of article 2, charter of the city of Tulsa, as follows:

"All police and firemen of the city of Tulsa shall hold their positions during good behavior and shall not be removed from the same except for such cause as, in the opinion of the board of commissioners, renders them unfit to remain in the service of the city, and after written notice giving the grounds for such discharge or removal and an op-

portunity to be heard on such charges or reasons."

Conceding that the plaintiff, as such police officer, was regularly appointed and could be discharged for economy purposes, the question is presented as to how he is to be discharged and what was really done in discharging him. In the record, we find the minutes of a recessed meeting of the mayor and board of commissioners held on May 7, 1934, wherein Hoop, the commissioner of fire and police, presented a list of police department members and made a motion that the parties named in the list, including the plaintiff, be dismissed as an economy measure. The motion was duly passed, effective the same day, and the plaintiff notified by letter, of the same date, of his discharge for reasons of economy and he discontinued service.

Article 2, section 3, paragraph 1, of the charter of the city of Tulsa · authorizes the city of Tulsa, by ordinance duly passed, to establish and maintain a city police department and to prescribe the duties of policemen and regulate their conduct.

Article 3, section 13, of the charter, relative to tenure of officers, and speaking of the commissioners, provides:

"* * *They shall have power to create such offices as they may deem necessary for a prudent and successful administration of the affairs of the city, and to fix the salaries of the persons appointed thereto; provided, that the term of any such office so created by them shall never exceed the period of one year, and they shall have the power to abolish at any time any such office and to terminate the official duties and relations of the person occupying the same."

Section 1 of ordinance No. 3977, under which plaintiff claims he was holding office, enumerated among the officers, members, and employees of the police department: One chief of detectives, one secretary to chief of detectives, three assistants to the chief of detectives. Section 1 of that ordinance was changed by ordinance No. 4042, passed and approved July 10, 1934, in which none of the above-named officers were mentioned. The defendant contends that the plaintiff was lawfully discharged and, later by ordinance No. 4042, the office formerly occupied by plaintiff was abolished.

Section 6 of ordinance No. 3977, under which plaintiff claims to hold the office, referring to police department, provides:

"That nothing in this ordinance shall be construed to limit the power of the board of commissioners to reduce the number of officers, members or employees of said department, or to readjust the salaries paid to them, in accordance with the needs of the city, financial or otherwise."

In view of these provisions of the city charter and ordinances, we do not think that provisions of section 30, article 2, of the charter was intended to prohibit the board of commissioners from discontinuing or abolishing an office for financial reasons. That, of course, would result in the discharge of the officer holding such office, but would not be such cause for discharge as would necessitate such "written notice, giving the grounds for such discharge or removal and an opportunity to be heard on such charge or reasons" as is contemplated and required in section 30, article 2, of the charter.

We must not lose sight of the fact that city finances are governed by general laws of the state, and a municipality can spend for officers' salaries, or otherwise, only such sums as are regularly and lawfully provided for.

In City of Shawnee v. Hewett, 37 Okla. 125, 130 P. 546, this court held:

"Where the revenues of a city are not sufficient to pay an assistant chief of police, the council have the right to discontinue the office, and to discharge the incumbent of that office without charges having been preferred against him"

—and said:

"It was not a removal from office because of misconduct or inefficiency. The office was not one the existence of which was necessary to maintain the city government. It was an inferior, appointive office and not an organic part of the city."

Many authorities are cited to sustain that contention.

The plaintiff contends that the office he occupied was not abolished, but that the board of commissioners attempted to discharge him in violation of the city charter and that another person was appointed to perform the same services, and which shows that the attempt to discharge plaintiff was not an economy measure. There is some inconsistency on that point in the amended answer and the argument in the brief of the defendant. In defendant's amended answer (C.-M. 45 and 46), it is contended that the position occupied by the plaintiff was abolished and the

police department of the city was reorganized. In defendant's brief (p. 131) the second proposition presented for argument is that, an officer having been removed from office and another person appointed, mandamus cannot be invoked, etc. In so far as the office occupied by the plaintiff is concerned, there could be no economy in discharging the plaintiff and employing another to take his place at the same or larger salary and to perform the same work. We must look to the evidence to ascertain if the discharging of some 25 officers from the police department was an economy measure and if the particular place occupied by the plaintiff was filled by a new appointment.

Witness O. W. Hoop testified, in substance, that after May 7, 1934, when the plaintiff was laid off or discharged, there was a rearrangement of the areas covered by the scout cars, the work in which the plaintiff was employed, and reducing the areas from eleven to six; that when the plaintiff's services were discontinued no one took his place and that the place was still vacant, and that 18 other such vacancies were still open; that the officers were discharged for reasons of economy; that 16 regular officers were in the police department that were not in the department on May 7, 1934, and about 40 reserves, provided for under ordinance No. 4032, passed by the mayor and board of commissioners on May 11, 1934; that the reserve officers were paid by the day when they worked.

Witness Lee Evans, deputy city auditor, testified as to the number of men employed in the police department and the amount of money spent for the fiscal year beginning July 1, 1933, and ending June 30, 1934; that from May 1, 1934, to May 7, 1934, there was spent for police department $4,046.89, and 140 men were employed; that from May 8th to May 15, 1934, only 117 men were employed in the police department, at a cost of $3,806. We have failed to find any evidence in the record to the effect that any person was appointed to the particular position formerly occupied by the plaintiff, or that any person was paid a salary therefor. Doubtless the same class of work was performed by another, who might have performed other duties in connection therewith and at a lesser or greater salary than plaintiff received, and still the particular office could have been abolished on account of economy. When ordinance No. 4042 was passed, July 10th, reorganizing the police department and reducing the number of employees from 140 men to 127 men and failing to retain the particular position occupied by the plaintiff, we think the result was to abolish that particular office, and from the evidence introduced, this court cannot say that such office was not abolished for economy purposes.

The trial court evidently was not of the opinion that plaintiff was fully discharged until July 12, 1934, the effective date of ordinance No. 4042, abolishing the plaintiff's office. The court held that there was no evidence showing abandonment on part of plaintiff, and, refusing defendant's request to submit that question to the jury, instructed a verdict allowing the plaintiff salary until the date of abolishment of his office.

Finding no error in the judgment of the trial court, the same is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, WELCH, CORN, and GIBSON, JJ., concur. PHELPS, J., absent. HURST, J., disqualified.