## CITY OF TULSA v. COKER.

No. 27406.   Oct. 12, 1937.

Rehearing Denied Nov. 23, 1937.

H. O. Bland, Milton W. Hardy, and E. M. Gallaher, for plaintiff in error.

Floyd L. Rheam and Wallace C. Franklin, Jr., for defendant in error.

PHELPS, J.   Plaintiff was a member of the police force of the city of Tulsa.   On January 6, 1933, when he reported for duty he was given a letter signed by the chief of police, wherein he was informed that he was suspended for five days for conduct unbecoming an officer and that he had the opportunity of taking his cause to the mayor and commissioners if he so desired, and directing him to deliver over any equipment in his possession belonging to the police department.   He turned in his badge, which was the only property of the police department which he had, and at the expiration of the five days he reported for duty.   He was not permitted to go on duty, and thereafter he daily reported for duty, according to his uncontroverted testimony, and was not permitted to work.   Thereafter he filed salary claims for January and February, which were refused.   On March 13, 1933, a special meeting of the mayor and board of commissioners was held, "to consider charges heretofore filed against Geo. A. Coker, member of the police force of the city of Tulsa." The record does not reveal when or by whom the charges were filed.   At that meeting a hearing was had and plaintiff was dismissed from the police force.

Subsequently the plaintiff brought this action against the city to recover his salary for the period of time between the suspension and the date of the official discharge, March 13, 1933.   The trial judge directed a verdict for the plaintiff, and the defendant city appeals.

There appears to be no serious contention by the city that the method used in attempting to "discharge" the plaintiff, prior to the official discharge by the mayor and board, was legal.   A provision of the city charter provides certain steps to be followed in the discharge of a member of the police force, discussion of which provision is unnecessary here, for the reason that it appears virtually to be conceded that the so-called "discharge" was illegal.   We therefore do not pass upon the question.

The city, however, does contend that, even though the discharge was illegal, the city officers paid the plaintiff's salary to another officer who took his place on January 6, 1933, and that therefore the plaintiff cannot recover.   In this connection the defendant cites the rule announced in Stearns, Mayor, v. Sims, 24 Okla. 623, 104 P. 44, 24 L. R. A. (N. S.) 475, as follows:

"Where a de jure chief of police is, pending suit on charges against him in the district court, wrongfully suspended by order of the judge thereof at chambers, which said order is later set aside and said suit dismissed, and where said city pays a chief of police de facto, during his incumbency, the salary provided by law, said officer de jure after obtaining possession of the office cannot recover from the city the salary for the same period."

The defendant points out that the plaintiff had been assigned to and was doing duty in a certain scout car, on patrol duty in the city, and contends that upon plaintiff's "discharge" one R. B. Jones was appointed in his stead, at the same salary, and was paid

the salary during the period of time for which the plaintiff is seeking recovery thereof, and that if the city were now compelled to pay salary to plaintiff, it would be paying the salary twice. Thus the defendant argues that the rule that payment to a de facto officer precludes the later recovery thereof by the de jure officer, relieves said city from liability in this suit.

In Stearns, Mayor, v. Sims, supra, the chief of police of Shawnee had been suspended from office by an order of the judge of the district court, but was thereafter reinstated in office, on the ground that the original order of suspension was illegally made. During the interim another had performed the duties of the office and the city had paid to him the salary pertaining to the office for the period of time which he served. In a subsequent action for the salary against the city by the chief of police who had formerly been suspended (who was the de jure officer) it was held that the payment by the city to the officer serving during the interim (the de facto officer) barred the de jure officer's action. That decision was based upon the rule announced in the syllabus copied therefrom above, which appears to be the weight of authority in this country. It remains to be seen whether the facts of the instant case bring it within that rule and the reason for said rule.

We now consider those facts in more detail. In stating such facts we are of course bound and limited by the record before us. The defendant introduced the pay rolls of the police department for the months of December of 1932 and January, February, and March of 1933. The December and January pay rolls show plaintiff thereon at $148.50 per month, to and including January 5th. Beginning January 6th there appears the name of R. B. Jones, whose name had not appeared on the December pay roll. He is shown to be receiving $148.50 per month, the same rate at which plaintiff had been paid. However, there are many others within the same classification on the same pay roll at the same rate of pay. The city also produced evidence to the effect that R. B. Jones was assigned to duty in the same scout car and with the same scout car partner with whom the plaintiff had worked. These are the facts on that issue, and the defendant contends that they show that Jones was appointed to fill a vacancy caused by the discharge of the plaintiff, in

such a way as to constitute Jones a de facto officer, payment to whom should bar recovery by the plaintiff. We are of the opinion that, accepting said facts as true, they do not bring the case within the rule of Stearns, Mayor, v. Sims.

We perceive a basic distinction between cases like Stearns v. Sims, supra, and this one. An examination of that case, and of all the cases upon which it is founded, as well as virtually all other cases invoking the doctrine, reveals that the office under consideration in such cases was a particular and definite office with its own unique identity, which could be filled by one person only, such as chief of police, mayor, county clerk, county treasurer, court clerk, etc. When once the people have paid the salary prescribed for that particular office, let us say for the mayor, they should not be required to pay it again to some other individual, for the same service for the same period of time. Else they would in effect be paying for two mayors, when the ordinance provides for but one. That is the main basis of the rule, the reasoning upon which it is founded, though some of the cases give additional reasons. It may be that the same reasoning would be applicable in the instant case if the police department had been operating at the full number authorized by ordinance (we express no opinion thereon), but such is not the case. The ordinance and the pay rolls are before us; they reveal that the department was operating with a considerably less number of officers within plaintiff's salary class than that authorized by the ordinance. And there is no question in the case concerning any lack of appropriation to pay the salaries of all policemen authorized by the ordinance.

How, then, may it be said that plaintiff's recovery is requiring the people to pay the salary of "the same office" twice? It can no more be said that Jones filled a vacancy caused by plaintiff's illegal discharge than it could be said that he filled any other vacancy. There were already vacancies, if they may be called that, before plaintiff was discharged. Jones was not appointed to fill plaintiff's "office", for plaintiff's office was not the occupancy of that particular car; he was appointed to the police department and was by the police chief assigned to do the routine work formerly performed by plaintiff. He could as easily and legally

have been assigned to any other duty. It may be conceded that if plaintiff had not been discharged, Jones would not have been employed, but still that is not crowding the salary of two men into the same office. There were many such offices. If plaintiff had not been discharged at all, Jones could still have been employed in such office and assigned to like duty. The same could not be said in Stearns v. Sims, supra, and in like cases, for the ordinance permitted payment to but one chief of police and there was but one office to fill; anyone acting as chief of police during the suspension was necessarily acting in the place of the suspended chief, and, when he was paid, the salary of that very office was paid, which would necessarily result in a duplication of payment if it had again been ordered to be paid.

Furthermore, in order to invoke the rule of Stearns v. Sims, Jones would have to be considered a de facto officer. One may never be considered a de facto officer unless his incumbency is at some time declared to have been illegal in some respect. Would the defendant city contend that the right of Jones to the position during that period was dependent upon the legality of plaintiff's discharge? We hardly think such a contention could successfully be made, in view of the fact that there were vacancies within the department and there was ample appropriation with which to pay him. The validity of his appointment was in no wise dependent upon whether plaintiff was or was not illegally suspended or discharged; there was no connection between the two; there was no duplication of salaries for the same office, and the reason underlying the rule in Stearns v. Sims, and proper in that case, is entirely beside the point in this case, where the facts do not justify its application.

The defendant also complains of the trial judge's rejection of the assistant city attorney's testimony. He would have testified that the city attorney's office had advised the chief of police that the form of letter given plaintiff was the correct form for use in discharging police officers. It is said that this would have shown good faith on the part of the chief of police and the city. We are not informed in what manner the issue of good faith would have affected the present action. The chief of police was not

sued; no exemplary damages were prayed for, nor was it a damage action at all; it was simply a suit to recover the salary authorized and directed by ordinance, involving as a primary question whether the attempted discharge was legal or illegal. In view of the fact that plaintiff in error has not seen fit to brief that question, or to submit any proposition contending that it was legal or could have been proved legal by the proffered testimony, it is unnecessary to further consider this contention.

The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and CORN, GIBSON, HURST, and DAVISON, JJ., concur.