CITY OF TULSA v. JOHNSON et al.

No. 30592.   Feb. 13, 1945.

Rehearing Denied Nov. 6, 1945.

Application for Leave to File Second Petition for Rehearing Denied Dec. 11, 1945.

*163 P. 2d 993.*

Chas. R. Bostick, Remington Rogers, A. M. Widdows, and Walter C. Henneberry, all of Tulsa, for plaintiff in error.

Eldon J. Dick and Lou Etta Bellamy, both of Tulsa, for defendant in error Emery Johnson.

OSBORN, J. This action was instituted in the district court of Tulsa county by Emery Johnson seeking to recover from the city of Tulsa, in his first cause of action, the sum of $4,950, representing the salary claimed to be due him at $150 per month from May 7, 1938 (the date of his discharge) to the commencement of this action on February 13, 1941, alleging his wrongful and illegal discharge on the above date from the position of "dog catcher," which he asserted was a component part of the police department of the city of Tulsa, and that his discharge was wrongful and illegal by reason of the fact that he was so discharged without cause and without notice and an opportunity to be heard, contrary, as he alleged, to the provisions of the charter of the city of Tulsa. As a second cause of action he

sought a mandatory injunction requiring his reinstatement as a member of the police force. Motions of all parties for a directed verdict on the first cause of action were overruled, but the court thereupon took the issues from the jury and directed a verdict for plaintiff in the sum of $3,075 (representing his salary to September 1, 1940) and interest in the sum of $325 in favor of plaintiff on his first cause of action, the sum being less than the amount sued for, and judgment was rendered accordingly. The court sustained defendant's motion for a directed verdict on the second cause of action. The defendant city appeals, and plaintiff has filed a cross-appeal.

According to plaintiff's petition he had served as "pound man" on the city's police force for a number of years prior to May 7, 1934, at which time he received from the duly authorized officers of the city a written appointment as a regular police officer with the rank of dog catcher. He served in that capacity under that appointment until May 7, 1938, when he was summarily discharged for the asserted reason that the city was short of funds. Said discharge was without notice or hearing and no other cause or reason was given therefor. He asserts that the position of dog catcher, having the status of a policeman, was created by section 1, article 1, chapter 18, Revised Ordinances of Tulsa, which reads as follows:

"A Police Department of the City of Tulsa, Oklahoma, is hereby created and established. The Chief of Police shall be the executive head of the Police Department, subject to the superior authority of the Police and Fire Commissioner. The membership of the Police Department shall be of rank as follows: (1) Chief of Police, (2) Two Captains, (3) Two Lieutenants, (4) Seven Sergeants, (5) Three Matrons, (6) One Chief Jailer, (7) Two Assistant Jailers, (8) One Statistician, (9) Detectives, (10) Patrolmen, (11) Traffic Officers, (12) Motorcycle Police, (13) Patrol Driver, (14) Dog Catcher, (15) Civilian Service, consisting of a PBX operator, two electricians and four mechanics."

He further asserts that as such dog catcher he had a right to hold said position during good behavior and could not be removed except for cause and upon written notice and an opportunity to be heard on any charges lodged against him, all pursuant to section 30, article 11, of the city charter, as follows:

"All policemen . . . of the City of Tulsa shall hold their positions during good behavior and shall not be removed from the same except for such cause as in the opinion of the Board of Commissioners renders them unfit to remain in the service of the city, and after written notice giving the grounds for such discharge or removal and an opportunity to be heard on such charges or reasons."

Defendant city contends, as to the first cause of action, that the above-quoted provisions have no application to plaintiff in that he is not a policeman as used therein. And it further contends that upon his discharge one Floyd O. Easton was duly appointed and commissioned to succeed plaintiff in said capacity, and, with certain immaterial exceptions, served therein to the date of the filing of plaintiff's petition, drew the compensation provided by the charter and ordinances for said position, and that all the funds so appropriated for such position were duly expended in the payment of the salary of the said Easton, all of which was duly supported by the evidence in this case. The city contends, therefore, that the said Easton in any event was a de facto officer and that the city having paid the fixed salary to the said Easton, the city cannot be called upon to pay another salary to the plaintiff even though his discharge was wrongful.

We do not think it is necessary to determine herein the contention of plaintiff as to whether or not he came within the terms of the above-quoted provisions of the city charter, for we believe that the correctness of the trial court's decision on the first cause of action is determinable upon the second contention of the city above set out, that is, that the salary appropriated for said position having been paid to another,

the city cannot be called upon to pay the plaintiff his salary. We assume, therefore, but do not decide, that plaintiff's position comes within the quoted provisions.

In Stearns, Mayor, v. Sims, 24 Okla. 623, 104 P. 44, 24 L.R.A. (N.S.) 475, we held:

"Where a de jure chief of police is, pending suit on charges against him in the district court, wrongfully suspended by order of the judge thereof at chambers, which said order is later set aside and said suit dismissed, and where said city pays a chief of police de facto, during his incumbency, the salary provided by law, said officer de jure after obtaining possession of the office cannot recover from the city the salary for the same period."

See, also, though not directly in point, City of Tulsa v. Coker, 181 Okla. 291, 73 P. 2d 443, and Board of Com'rs of Creek County v. Jenkins, 123 Okla. 196, 252 P. 825. The Stearns Case, supra, voices the principles laid down by a very great majority of the courts of last resort of the United States. It would serve no useful purpose to attempt, in this opinion, to analyze the holdings of the various courts on this question when such analysis has been exhaustively made by an annotator in 55 A.L.R., at 997, wherein the majority and the minority rules have been fully discussed under the following statement:

"While there is much conflict as to whether or not payment of salary by a state or municipality to a de facto officer who holds the office by color of title constitutes a valid defense, when the de jure officer, after establishing his title, subsequently seeks to recover salary for the same time from the same source, the general rule prevails that this is a good defense; and it seems to make little difference generally whether the public body had notice or knowledge that the incumbent's right to the office was then being contested. And the rule has frequently been applied even to cases of removals or suspensions which have been found to be unwarranted, where the de jure officer sues for his salary after being restored to his office. The courts taking this view generally agree that, upon grounds of public policy, the office must be filled and the salary cannot be paid twice; and, further, that the de jure officer's sole remedy is against the de facto officer; they also appear generally to consider that the certificate of election, or the commission, or a judgment of a lower court in the incumbent's favor, is itself sufficient justification for paying the de facto officer. It will also be observed that some of the courts state other grounds for the rule."

See, also, a very exhaustive and lengthy opinion of the Supreme Court of Missouri in the case of State ex rel. Gallagher v. Kansas City et al., 319 Mo. 705, 7 S.W. 2d 357, 59 A.L.R. 95.

Whether the discharge of plaintiff was wrongful and illegal by reason of failure to comply with the provisions of the city charter with reference to a notice and hearing (a question we do not decide), the plaintiff ceased to perform the duties of that office, and the duly constituted authorities duly commissioned another person to perform the duties of said office and he entered upon the discharge of those duties under color of authority and title and performed the same for months and years, during which time no legal proceedings were pending asserting an adverse right to the office or the emoluments thereof. He was, therefore, a de facto officer and not a mere usurper or intruder. 46 C.J., Officers, §§ 366 and 371; Mechem, Public Officers, §§ 318 and 319; Constantineau, A Treatise on the De Facto Doctrine, §§ 22, 23 and 25; Throop, Public Officers, § 623.

It is said by plaintiff, however, that the doctrine of the Stearns Case, supra, has been modified or restricted by this court in the case of City of Ardmore v. Sayre, 54 Okla. 779, 154 P. 356. The opinion in that case (by Commissioner Robberts) on this point was predicated upon the fact that by the pleadings in said cause, absent a verified general denial, the plaintiff therein was conclusively admitted to be occupying and discharging the duties of said office, and that, therefore, there was no field

of operation for a de facto officer. This conclusion is borne out by the following statement in the opinion:

"It requires no argument to show that defendant cannot admit in one breath that plaintiff is the duly appointed officer, attempting to perform the duties of his office, and deny it in the next. It is well settled upon reason and by numerous authorities that two persons cannot occupy one office at the same time, one as a de facto, and the other a de jure, officer. Under these facts, as alleged in the petition, and admitted by the answer, Meyers has no standing or rights as a de facto officer."

In that case the claimed de facto officer, says the court, "was acting simply as a usurper." Further quoting therefrom, "In the instant case the pretended appointment, being absolutely void, made without even a color of power or right, was simply a nullity." But herein, even if the city proceeded irregularly, it was vested with specific authority to remove, whereas, in the cited case, the court held no such power existed. In other words, the removal in that case was not merely irregularly made, but it was wholly void and beyond the power and authority of the city. Hence, it was ineffective to give the city authority to make even a colorable appointment. But in the case at bar the appointment was duly made by the duly constituted authorities. The plaintiff was neither occupying the office nor pretending to discharge the duties thereof. The duly appointed person entered into said office and discharged the duties thereof under an appointment which even yet has not been declared invalid. For two years and nine months no legal proceedings had been filed asserting title and right by anyone else to said office, and the present incumbent is not even a party to this proceeding. We think all of the essential elements of the qualities of a de facto officer are present herein. The Sayre Case, therefore, distinguishes itself. We think the court erred in directing a verdict in favor of plaintiff and in not directing a verdict in favor of the city.

As to plaintiff's second cause of action

presented on cross-appeal by plaintiff, the court instructed the jury to return a verdict in favor of the city. Since this cause of action was equitable in nature, this was tantamount to a holding by the trial court that the plaintiff was not entitled on equitable considerations to the relief prayed. We shall not discuss the appropriateness of the remedy chosen by the plaintiff, which remedy the city earnestly challenges.

He had waited two years and nine months to institute his action, during which time he knew that another was performing his official duties and receiving the salary therefor. On September 1, 1940, he accepted the position of school guard under employment by the city, and the trial court held, as a basis for his ruling, that he had abandoned his claim to his previous position by the acceptance of the inconsistent duties of school guard.

Many authorities are cited in an attempt to show that plaintiff did not abandon his office as held by the court. Those cases hold generally that a party may occupy two offices at the same time so long as not prohibited by law or when the duties of the two are not incompatible, and that in cases of this character the acceptance of the second office does not constitute abandonment of the first, if the duties are not inconsistent.

Abandonment of public office may result from an acquiescence by the officer in his wrongful removal. 46 C.J. 981, § 139. In the same text, section 137, it is said:

"While, in order to constitute an abandonment of an office, it must be total, and under such circumstances as clearly to indicate an absolute relinquishment, the determination of the question whether an officer has abandoned an office is dependent upon his overt acts rather than upon his declared intention, and the law will infer a relinquishment where the conduct of the officer indicates that he has completely abandoned the duties of the office."

And in 43 C.J. 800, § 1382, appears

the following statement of the law concerning policemen:

"A policeman need not manifest, by writing or express words, his intention to abandon or resign the office, but may vacate the office by withdrawing from the force, disclaiming to hold office and engaging in an employment inconsistent with the discharge of its duties; the acceptance of an incompatible office by a policeman amounts to a resignation; but a policeman ousted from office without authority does not accept an inconsistent office, and so abandon the office of policeman, by accepting a temporary appointment to another office."

In an exhaustive annotation in 145 A.L.R. 767, cases are cited from practically every state in the Union supporting what is stated to be the general rule, as follows:

"It is well settled that however unjust and unwarranted the removal, suspension, or transfer of a public employee may be, his right to reinstatement may be lost by acquiescence in the removal, or by laches or unreasonable delay in demanding reinstatement or asserting his rights in legal proceedings, the principle underlying all the decisions being based on considerations of public policy, to the end that if such person is successful in his action the public service may be disturbed as little as possible, and that two salaries may not be paid for but one service."

In Nicholas v. United States, 257 U.S. 71, 66 L. Ed. 133, 42 S. Ct. 7, the Supreme Court said:

"While one inducted into office or public employment is entitled to the privileges or emoluments thereof, until legally separated therefrom, he is not absolved from the duty of diligence upon his part in the assertion of his right to the office, or to the compensation attached thereto. Public policy requires that the government shall be seasonably advised of the attitude of its officers and employees attempted to be displaced when they assert illegal removal or suspension as a basis for the recovery of the office or its emoluments. This is necessary in order that proper action may be taken in the public interest, as well as that which is required to vindicate the rights of one wrongfully removed from public service."

In Jones v. Doonan, 265 Mich. 384, 251 N.W. 571, the court said:

"It is not to the public good that officers or employees shall accept illegal discharge, or rest quiescent under it, and later mulct the public purse for money not earned. Unreasonable delay in asserting claim to the office results in abandonment of it and waiver of the right of trial. Public business requires that the assertion of claim to office be by formal demand and appropriate legal proceedings. It is not sufficient to merely make a claim and leave it open to inaction or controversy."

In Glori v. Police Com'rs, 72 N.J.L. 131, 60 A. 47, the court said:

"In our judgment, where a police officer is dismissed by the regularly constituted authorities of the city, and claims that the dismissal is unwarranted, he should move with the utmost promptness in order to secure the intervention of the court. The proper discipline of the force and the proper administration of the affairs of the city require that the right of the dismissed policeman to be reinstated should be promptly determined."

In the instant case, not only was there a long delay in instituting legal proceedings, but there is also ample evidence to show that the position of school guard was inconsistent with that of dog catcher, and that the position so accepted was sufficiently permanent in nature to warrant the belief that it was not accepted by plaintiff merely temporarily. The finding that plaintiff had abandoned the position or office of dog catcher was sustained by the evidence, and we find no error in the judgment.

The judgment is reversed as to the first cause of action, with directions to enter judgment thereon for defendant, and affirmed as to the second cause of action.

HURST, V.C.J., and BAYLESS, WELCH, DAVISON, and ARNOLD, JJ., concur. GIBSON, C.J., and RILEY and CORN, JJ., dissent.