**BOARD OF COUNTY COMMISSIONERS OF OKLAHOMA COUNTY, State of Oklahoma, Plaintiff in Error,**

v.

**Charles A. LITTON, Defendant in Error.**

**No. 37263.**

Supreme Court of Oklahoma.

June 4, 1957.

Rehearing Denied Sept. 10, 1957.

Granville Scanland, County Atty. of Oklahoma County, and Nathan S. Sherman. Asst. County Atty. of Oklahoma County, Oklahoma City, for plaintiff in error.

Dudley, Duvall & Dudley, Paul Dudley, Oklahoma City, for defendant in error.

BLACKBIRD, Justice.

This appeal involves the right of defendant in error, a former County Commissioner of Oklahoma County, to the salary of said office for that part of his unexpired term after he was decreed to have forfeited the office by reason of violating the statute originally enacted as Chap. 173, art. II, S.L. 1915, which said statute, as amended, is now designated as Tit. 69 O.S.1951 §§ 322–327, inclusive. The decree of forfeiture was contained in the judgments of conviction entered by the District Court of said County in its criminal cause No. 21151, entitled "State of Oklahoma v. Edd L. Hisel, Charles A. Litton and Grover Pendleton." Litton and Hisel lodged separate appeals in the Criminal Court of Appeals from the individual judgments entered against them in said action. These appeals are reported as Litton v. State, 97 Okl.Cr. 367, 264 P.2d 386, and Hisel v. State, 97 Okl.Cr. 356, 264 P.2d 375.

The particular section of said statute that the above-named County Commissioners were alleged by the Information filed in said criminal action, to have violated, is Tit. 69 O.S.1951 § 323. The penal provisions of said Act are found in sec. 327 of the same title, as follows:

"Any road, county, or other official charged with duties herein who shall violate any of the terms or provisions of this Act shall be deemed guilty of a misdemeanor and upon conviction shall be fined not less than One Hundred ($100.00) Dollars for each offense, or imprisoned in the County Jail not less than Thirty (30) Days, or suffer both such fine and imprisonment. Upon presentation in court of complaint in legal form, alleging violation of any provision of this Act, any road official charged with the duties herein shall be, at the option of the court, immediately suspended from office pending final judgment, *and upon being* found guilty shall forfeit his office in addition to any punishment imposed." (Emphasis ours.)

In Hisel's and Litton's appeals from the above-mentioned judgments of conviction and forfeiture, the Criminal Court of Appeals, in the afore-cited opinions promulgated November 25, 1953, found the evidence insufficient to sustain said judgments, and reversed them.

Thereafter, in December, 1954, Litton instituted the present action, as plaintiff, against Oklahoma County and its then Board of County Commissioners, as defendants, to recover the sum of $3,331.90 as the salary allegedly due him as County Commissioner from June 28, 1952, the date of his conviction in the District Court, to January 5, 1953, the date his term of office expired, with interest on said sum at the rate of six percent. Said plaintiff's theory was that, upon the aforesaid reversal of his conviction by the appellate court, he was entitled to all of the emoluments of said office, as if he had never been convicted.

The action was tried only against the defendant Board of County Commissioners; and, in our further reference to the parties to this appeal their trial court designations of "plaintiff" and "defendant" will be used.

At the trial, although it was stipulated that on the date of plaintiff's criminal conviction and forfeiture of his position of County Commissioner, the State's then Governor appointed one Earl Laverne Overholser to fill the position, and that Overholser immediately qualified for said office and performed all the duties, and was paid the regular salary thereof for the entire period involved in this action, the trial court entered judgment for plaintiff herein. Thereafter, defendant lodged the present appeal.

To deal with defendant's argument for reversal, it is first necessary to determine the meaning of sec. 327, supra, under which the judge, who tried him without a jury in Cause No. 21151, supra, found by his judgment, plaintiff had violated sec. 323, supra; and, in said judgment decreed forfeiture of his office. If defendant interprets the law correctly and said judge was thereby authorized to decree such forfeiture, or, if as thus interpreted, plaintiff's right to said office, upon said conviction, became forfeited by operation of the law itself (without any such decree, or declaration by the court) as defendant's argument might infer, the correctness of the judgment herein appealed from, allowing plaintiff recovery of the salary of said office, is doubtful.

We think the key to the correct interpretation of the section in question is the way that the term "final judgment" is used therein. It will be noted that the statute authorizes suspending the official charged, or complained of, "pending final judgment * * *". If "final judgment" as here used means only one that has become conclusive, then, in the event an appeal has been lodged, the quoted phrase could only mean "pending" the appellate court's decision, or other final disposition of the appeal. As the term "forfeit" connotes an entire and permanent loss, rather than a

temporary withholding, like the word "suspend" (see State v. Heinmiller, 38 Ohio St. 101, 108, and other cases cited in 67 C.J.S. Officers § 58, page 233, under Note 40, and the definition of "forfeit" in Ballentine's Law Dictionary and Webster's International Dictionary) the statute would have to be read as saying that the official could be suspended from the office for a period longer than it belonged to him, or, in other words, suspended from the office for a period not terminating until some time after (depending on how long it took the appellate court to dispose of the appeal) he had absolutely lost the office by forfeiture. This would render the statute ambiguous, its meaning absurd, and its effect anomalous. It must be presumed that the Legislature intended no such meaning, interpretation, or result. While we recognize that the term "final judgment" may be used in different senses, and mean different things for different purposes, such, for instance, as when a judgment is "final" for the purpose of appeal (in which instance it may be said to become so "when the tribunal in which it is rendered gets done with it". In re Casebier, 129 Kan. 853, 284 P. 611, 614, cited in the Annotations at 106 A.L.R. 644, 645; and, to the same effect, see the quotation from State v. Savage, 86 W.Va. 655, 104 S.E. 153, in State ex rel. Blake v. Levi, 109 W.Va. 277, 153 S.E. 587, 588, also cited in said Annotations at page 646) the general rule has long been that "a judgment is not final *in the sense that it is conclusive upon the parties* until the losing party has failed, within the time allowed by law to perfect his appeal, or having properly prosecuted his appeal, until the highest court whose decision is invoked by either party upholds the decision of the trial court." Methvin v. Methvin, 191 Okl. 177, 127 P.2d 186, 188. In view of the fact that the meaning of the term "final judgment" when used in this sense had such a well recognized meaning by the time sec. 327, supra, in its original form, was enacted in 1915, and the further fact that the general statute dealing with "Officers" (Tit. 51 O.S.1951 §§ 1–105, inclusive; Chap. LVIII, Statutes of Oklahoma,

Rev. & Ann.1903) that had been on the statute books more than twenty-five years (effective beginning Dec. 25, 1890), specifically used it in that sense, it is unreasonable to believe that the Legislature intended, by the special statute, to prescribe expulsion of an official, upon being found guilty of a misdemeanor, more summarily (or before appellate review of his conviction) than is provided by the general statute (Tit. 51, § 8, supra, par. "Fifth") for a "conviction of any infamous crime * * *." It is reasonable to believe that, in enacting the 1915 Statute, the Legislature intended not only that said Act should be unambiguous, and its provisions consistent with each other, but also that it should be consistent with the general statute, and should not render an office vacant sooner because of its holder's conviction of a misdemeanor than would be the case if he had been found guilty, or convicted, of a greater offense. We therefore hold that the term "final judgment" connotes no more conclusiveness as used in sec. 327, supra, than the same term possesses in sec. 8, supra; and, on the basis of this determination, we further hold that said later statute's provision for forfeiture of an official's office, "upon being found guilty", of a violation of said Act, was not intended to take effect until his conviction becomes final and conclusive, which, where the conviction is appealed, does not occur, as far as concerns the forfeiture, until final determination of the appeal. In this view, no specific statute for that purpose was necessary to establish, or restore, plaintiff's title to the office after reversal of the judgment in Cause No. 21151, for he had never lost said title. And, as far as the record discloses, the option given the court by said statute to suspend him from said office "upon presentation in court of complaint in legal form" was never exercised previous to the trial and judgment in said case. In view of the aspects of this case, to which we have alluded, and other facts and features thereof unnecessary to detail, we think that, upon thorough analysis, it is different and distinguishable from every case cited by the defendant and

others that have come to our attention through Annotations in 106 A.L.R., supra, and independent research.

The view we take of this case renders it unnecessary to discuss in detail other arguments set forth in defendant's brief under its Propositions No. 2–5, both inclusive. Briefly and generally stated, these are that since plaintiff, after judgment in Cause No. 21151, supra, performed none of the duties of the office as County Commissioner, but such duties were performed by another appointed to fill out his unexpired term, which said appointee was at least a "de facto" County Commissioner, the trial court's judgment in plaintiff's favor cannot be sustained even on the theory that plaintiff was, during the same period, the "de jure" County Commissioner, because:

(1) Establishing his right to the office by direct legal proceedings for that purpose was a condition precedent to the maintenance of such an action;

(2) The county's payment of the salary for said office is a complete defense to the present action for duplicate payment.

Defendant's argument with reference to (1) above, would have merit if, by reason of the judgment in Cause No. 21151, plaintiff had lost his title to his office as County Commissioner. However, as we have demonstrated, he did not, and the forfeiture decreed in said judgment never became effective, or operative, because said judgment was reversed. In terms of ultimate result, that part of said judgment became a nullity. This being true, no statute, nor legal proceedings under such a statute, was necessary to restore plaintiff's right and title to the office after the judgment's reversal. If the ordering of the forfeiture was a part of the judgment of conviction, the judgment's reversal worked a vacation of the forfeiture to the same extent that it vacated the conviction. In this connection, see Ward v. Marshall, 96 Cal. 155, 30 P. 1113, 31 Am.St.Rep. 198. As plaintiff had never been suspended by separate order or judgment, there was then no effective defect in his title to the office.

Nor do we think that the county's previous payment of the salary of said office to Mr. Overholser renders the trial court's judgment erroneous. We are fully aware of the fact that under the opinion of this court in the early case of Stearns v. Sims, 1909, 24 Okl. 623, 104 P. 44, 24 L.R.A.,N.S., 475, the county's payment to Mr. Overholser would be a complete defense to an action for the payment of a like amount to the plaintiff. We are further aware that the Stearns case has more recently been reaffirmed and followed by this court. See, for instance, City of Tulsa v. Coker, 181 Okl. 291, 73 P.2d 443, and City of Tulsa v. Johnson, 196 Okl. 213, 163 P. 2d 993, 163 A.L.R. 754. However, upon a thorough reconsideration of the matter herein, including a comparison of the opinions of other courts (see the Annotations at 55 A.L.R. 997, 59 A.L.R. 117, and 163 A.L.R. 760), we have concluded that the rule followed in Ness v. City of Fargo, 64 N.D. 231, 251 N.W. 843, where the defense of previous payment to a de facto officer was rejected, is the sound, just and logical one. In that case the court answered to our satisfaction every argument that has been advanced in favor of defendant's position. Without unnecessarily lengthening this opinion to discuss that case in detail, and without necessarily committing ourselves to accepting everything said therein, we adopt generally the views therein expressed, as indicative of the correct principles applicable to a case like the present one. To the extent that those views conflict with what we have said in the cases above cited and any others, said cases are hereby overruled.

In view of the foregoing determination of one of defendant's major defenses to the action, and grounds for reversal of the trial court's judgment therein, there remains only one of its arguments which merits further consideration. This is advanced under its Proposition No. 6, viz., "Plaintiff's cause of action is barred by statute." The only statute referred to is Tit. 62 O.S. 1951 § 310.4, which is sec. 4 of House Bill No. 370, enacted by the Twenty-First Leg-

islature, and commonly referred to as the "Purchase Order" law (S.L.1947, pages 391 and 392). Defendant argues that since plaintiff's claim, upheld in the trial court's judgment, was for his salary as County Commissioner for the period from June 28, 1952, to January 3, 1953, which constituted parts of the fiscal years of 1951–52 and 1952–53, and, plaintiff, before September 30th of these respective years, filed no claims for the portions of said sum which, under his theory, rightfully accrued to him during those particular fiscal years, he is now barred from claiming either portion thereof. There are several points of distinction between the claim involved here and the voluntary indebtednesses to which said Statute has been applied. See the discussion in Board of County Com'rs of Okmulgee County v. Ming, 195 Okl. 234, 156 P.2d 820, and 14 Am.Jur., "Counties", sec. 67. It will be remembered that the opinion of the Criminal Court of Appeals, in Litton v. State, supra, was not promulgated until November 25, 1953. (According to the undisputed allegation in plaintiff's petition, he filed a verified claim for his salary on December 30th, thereafter, and said claim was rejected by the defendant Board on January 4, 1954). Before said reversal, said claim was under the legal impediment of the district court's judgment of forfeiture in Cause No. 21151, supra. While said claim was under such impediment, the defendant Board, with presumptive regard for its official duty, would most probably have rejected it, if it had been presented. Under the circumstances, we do not think plaintiff's claim was barred by the so-called "Purchase Order" law, supra.

In accord with the foregoing, the judgment of the trial court is affirmed.

CORN, V. C. J., and JOHNSON, WILLIAMS and CARLILE, JJ., concur.

DAVISON, J., concurs in result.

WELCH, C. J., concurs in part and dissents in part.

HALLEY and JACKSON, JJ., dissent.

HALLEY, Justice (dissenting).

The majority opinion is, in my judgment, incorrect and I am compelled to dissent. Since September 14, 1909, it has been the law in this State that where a de jure chief of police, who was elected to office and who is, pending the trial of charges against him in the District Court, wrongfully suspended by order of the judge thereof, which said order is later set aside and said suit dismissed and where said City pays a de facto chief of police during his incumbency, the salary provided by law, said de jure officer after obtaining possession of the office cannot recover from the City the salary for the same. Stearns v. Sims, 24 Okl. 623, 104 P. 44, 24 L.R.A.,N.S., 475. In other words, this Court adopted the majority rule in cases involving the salary of officers removed from office which is that a de jure officer cannot recover his salary for the period he was suspended from office illegally when it was occupied by a de facto officer. The courts of last resort of twenty-six states have adopted this view. Only eight states have gone the other way and they are cases in which the de jure officer had not been removed or suspended by judicial determination as in the case at bar. So the great weight of authority supports the rule in Stearns v. Sims, supra, and to me it is the sounder view. It has been followed by us in City of Tulsa v. Coker, 181 Okl. 291, 73 P.2d 443 and City of Tulsa v. Johnson, 196 Okl. 213, 163 P.2d 993, 163 A.L.R. 754. A very comprehensive note on this question is found in 55 A.L.R. 997. See also 59 A.L.R. 117 and 163 A.L.R. 760. This statement is found in 67 C.J.S. Officers § 99 b:

> "The general rule is that an officer de jure cannot recover from the state or other governmental body emoluments of the office paid by it to an officer de facto during the period when the officer de jure is deprived of his office. * * *"

I have been unable to find any case where the elective office holder who has been convicted of a crime was permitted to draw his salary for the period his job was taken over by a de facto officer, regardless of reversal of the criminal conviction.

In light of the foregoing I trust there is no question as to the numerical weight of authority. But why should we execute an about face on a rule of law that has been ours for almost a half century. If any change should be made on this principle it should be done by the Legislature. If we adopt the minority view, how can the units of government of this State avoid double payments for services performed only by one? How can they ever be sure? I submit that in this case that Oklahoma County had the right to rely on the fact that Litton had been removed from office by an able District Judge and that his office had been filled by the Governor of the State as by law provided.

After his removal from office, Litton in no way challenged the right of the court to remove him. After he had appealed his criminal case, he did not come back into court and demand his job back. At no time does the record show that he informed any one that he wanted his job back or that he was filling the same. Overholser, who was appointed to fill Litton's place, served as the County Commissioner from Litton's district. The office had to be filled and no one else filled it.

It was not a mere circumstance that the highest courts of twenty-six states adopted the view they did. These courts realized it was not fair to the taxpaying public that tax money be paid one who has not performed any service. While it might not seem entirely just that one be elected to office and not receive the salary but those courts thought that if any one had to lose, it should not be the taxpayers. This is but one of the risks that a holder of public office takes. This Court forty-eight years ago told the world that such was the law in Oklahoma and the reference works of our profession so show us. Lit-

ton was presumed to know that when he assumed the office.

The majority opinion in this case relies on Ness v. City of Fargo, 64 N.D. 231, 251 N.W. 843. While that case adopts the minority view it recognizes that even under that interpretation an office holder may waive his right to his salary while out of office or by his conduct may estop himself from claiming it. Litton did this very thing by not attempting in any way to hold on to his office by appeal or by attempting to prevent Overholser from functioning. In the Ness case, supra, Ness immediately upon his removal from office brought suit in the proper court to test the validity of his dismissal but Litton did nothing. The authorities of the City of Fargo knew that Ness took the position that he and no one else was the proper person to hold his office. In the case at bar Oklahoma County had no such knowledge as to Litton as he asserted no such claim. I say that Litton acquiesced in his removal by his failure to take action to recover his office. After he had appealed his criminal case it was incumbent upon him to demand his reinstatement. See Bell v. Treasurer of Cambridge, 310 Mass. 484, 38 N.E.2d 660.

I submit that in this case that Oklahoma County was entitled to have County Commissioners to take care of the business of the County and that the County Commissioners, who were the elected officials, had been removed by judicial determination and these men could not be restored to office during their terms except by some court of proper jurisdiction. No effort was made to restore them. Their terms expired before the decision of the Criminal Court of Appeals in the case. Oklahoma County was not required to hold up the salaries of the persons who were appointed to and were performing the duties of County Commissioners. No one could be required to serve without pay. An appropriation was made to pay the County Commissioners. The requisite taxes needed were levied. The County should not

be required to dip into other funds or levy additional taxes to pay the salary twice.

In my opinion, Litton was no longer a de jure officer when the District Judge removed him and that Overholser was not only a de facto but the de jure County Commissioner.

The majority opinion argues that under 69 O.S.1951 § 327, that the term "final judgment" means after the appellate court has passed on the matter. Under my view of this case, I think this point is immaterial but I do not go along with this interpretation. I set out the last sentence in this Section:

> "* * * Upon presentation in court of complaint in legal form, alleging violation of any provision of this Act, any road official charged with the duties herein shall be, at the option of the court, immediately suspended from office pending final judgment, and upon being found guilty shall forfeit his office in addition to any punishment imposed."

Clearly under this Section when the complaint was filed, Litton could have been suspended from office immediately pending final judgment. I think that this term, "final judgment," meant the final judgment in the trial court because it provides right after the words "final judgment" this clause "and upon being found guilty shall forfeit his office, * * *". The expression "found guilty" refers to the trial court. It is the trier of facts. The appellate court in criminal cases either affirms, reverses or modifies a judgment of the trial court. It does not find a defendant guilty. To me it is plain that the Legislature intended that any road official "found guilty" of a criminal offense in the trial court should have his office forfeited. He was still guilty until the case was reversed.

Above all, and again I say, we should not overturn landmarks that have guided us for nearly fifty years without a better reason than urged. I dissent.

WELCH, Justice (concurring in part and dissenting in part).

I fully concur in the result of the majority opinion, but cannot approve and concur in the manner in which the majority opinion deals with our former decisions.

In my view the facts stated in the majority opinion distinguish this case from the decisions in all the cited former cases. No former decision is cited in a case where as here, one elected to public office was prosecuted for crime and was removed from such office in and by a judgment that he was guilty of the crime wherein one of the prescribed penalties was removal from office, but an appeal was allowed and was taken to the Criminal Court of Appeals and that court fully reversed said judgment of conviction in toto, thereby fully invalidating and vacating the judgment of conviction and all penalties thereby inflicted, including the adjudged forfeiture of office.

In such case the result is that the judgment of conviction and of forfeiture of office never became final. The office was never forfeited, and as an incident to the office plaintiff was entitled to the salary thereof.

See 51 O.S.1951 § 8, which provides in material substance as follows:

> "Every office shall become vacant on the happening of either of the following events * * *:
>
> "Fifth. Conviction of any infamous crime or any offense involving a violation of his official oath; provided, that no conviction, as a cause of vacation of office, shall be deemed complete so long as an appeal may be pending, or until final judgment is rendered thereon."

It seems to me that the fixed policy of our law requires affirmance of the judgment here under consideration.