**CITY OF TULSA, a Municipal Corporation, Plaintiff in Error,**

v.

**Don PARRISH, Defendant in Error.**

**No. 38108.**

Supreme Court of Oklahoma.
Dec. 23, 1958.

Darven L. Brown, City Atty., Henry Kolbus, Luther P. Lane, Charles E. Norman, Wilton W. Works, Joe T. Smith, Asst. City Attys., Tulsa, for plaintiff in error.

Elmore A. Page, Tulsa, for defendant in error.

BLACKBIRD, Justice.

Defendant in error is a former policeman of the City that appears herein as plaintiff in error. He instituted this action, as plaintiff, against said City, as defendant, after his discharge from said employment, seeking recovery of certain sums allegedly due him from said City as salary, and "earned vacation pay" as such police officer before he was validly, or finally, discharged in accord with the ordinances of the defendant city governing the matter. Our continued reference to the parties will be by their trial court designations.

As the salary plaintiff sought from defendant allegedly accrued during the time when defendant claims he was suspended

from his position as policeman, it is important to know the provisions of the Tulsa City Ordinances with reference to such matters. As alleged in the pleadings of both parties, one of these is Tit. 20, Tulsa Revised Ordinances, 1945, sec. 17, the material provisions of which read as follows:

"The Chief of Police of the City of Tulsa shall have the power to suspend summarily any member of the police department, for a period not exceeding thirty (30) days without pay, * * * for a breach of discipline, for violation of any order of the Chief of Police, or any established rule promulgated by the Police and Fire Commissioner. The Chief of Police shall immediately report in writing to the Police and Fire Commissioner, and to the Board of Commissioners, all cases of suspension * * * imposed as herein provided. The Police and Fire Commissioner shall, before the close of the next business day after such report by the Chief, approve, disapprove or modify said punishment and notify the member in writing. Any member of said department, punished as aforesaid may have an appeal to the Board of Commissioners, providing written demand is made upon the Board of Commissioners therefor within five (5) days from the date of suspension * * *, which demand shall be filed with the City Auditor. The action of the Board of Commissioners shall be deemed final. * * *"

The undisputed facts in the case are that on October 16, 1953, Mr. Joe McGuire, acting Police Chief of the defendant city, addressed a letter to plaintiff informing him that "effective as of" that date, he was suspended for "a period of fifteen (15) days pending investigation and filing of charges of conduct unbecoming to an officer"; and notifying him that he had five days to file an appeal to the Mayor and Board of City Commissioners. Plaintiff did not exercise his right of appeal pursuant to the notice and in accord with the above-quoted ordinance.

Thereafter, on October 29, 1953, plaintiff was notified in writing over the signature of J. L. Jones, Police and Fire Commissioner of the defendant city, that said Commissioner had filed written charges requesting his removal as a police officer, informing him of the time and place said charges were set for hearing, and also stating: "* * * pending the said hearing you are suspended from your position." According to the parties, the ordinance governing such matters is Tit. 11, Tulsa Revised Ordinances, 1945, sec. 25, whose pertinent parts, as copied in their respective briefs, are as follows:

"(b) The Board of Commissioners shall at the first meeting after the filing of such charges set the time and place of said hearing, which date shall not be less than three nor more than ten days thereafter; provided that said hearing may be adjourned or continued by the Board from time to time. The person so complained against shall be served with a written notice of the hearing by the City Auditor or some City employee designated by him.

* * * * * *

"(c) In the event such charges are filed, or approved, by the member of the Board of Commissioners under whom the person so charged is working, such person shall be immediately *suspended from* office or *employment pending the hearing*." (Emphasis ours.)

At the conclusion of the scheduled hearing before the Mayor and the Board of Commissioners of the defendant city on November 10, 1953, plaintiff was discharged. Thereafter, he filed a motion for new trial before that body of officials and said motion was denied. Thereafter, plaintiff perfected his appeal from said ruling to the District Court of Tulsa County, and, thereafter, on July 28, 1954, said court (according to the portion of plaintiff's petition stipulated to correctly state such facts) "sustained plaintiff's assignment of error on such appeal", holding that he "had not had a fair hearing before the Mayor and Board of Commissioners" when he was discharged on No-

vember 10, 1953, as aforesaid. Though the record contains no transcript, copy, or other authentic evidence of the District Judge's order, it seems to be agreed, and the trial court in this case found, that the principal ground upon which it was based, was that the aforementioned J. L. Jones, Police and Fire Commissioner, had acted both as a prosecutor and a judge in first filing the charges and then sitting with the other members of the Board, and the Mayor, in hearing same. According to the stipulated facts, the district court

> "thereupon remanded said cause for further proceedings before the Mayor and Board of Commissioners. * * * That, thereafter, kn the 6th day of August, 1954, said matter upon the removal of plaintiff as a police officer for said defendant was again heard by the Mayor and Board of Commissioners of said defendant * * * at the conclusion of which the said Mayor and Board of Commissioners of defendant found said plaintiff guilty of the charges therein before them and thereupon discharged him from his office as a police officer of the Police Department of said defendant."

Plaintiff took no appeal from the above mentioned order of August 6, 1954, discharging him, and it became final. He thereafter, in the early part of 1955, commenced the present action.

Under the first cause of action alleged in the petition plaintiff filed in this action, he sought the sum of $152.50, as that portion of his monthly salary of $305, due him for the fifteen days of his initial, "purported", suspension, of which he was given notice on October 16, 1953, as aforesaid. He alleged in substance, that such suspension was invalid and ineffective for the reason that it was never approved or otherwise acted upon by the Police and Fire Commissioner. See Tit. 20, sec. 17, supra.

In plaintiff's second alleged cause of action, he sought recovery from defendant of the sum of $2,795.83, arrived at by computing what he would have earned (at his policeman's salary of $305 per month) during the period from October 29, 1953, to August 6, 1954. His claim of entitlement to this sum was based upon the theory that under the aforementioned judgment of the district court of July 28, 1954, the previous order of the Mayor and Commissioners was illegal and ineffective; and that all during the above mentioned period, until his legal discharge on August 6, 1954, he "held himself available, ready, willing and able to resume and assume his duties as a police officer" in defendant's police department; that he resisted the dismissal proceedings against him, and that thereafter, during August, 1954, he presented his claim for salary for said period to the Mayor and Board of Commissioners, who denied it.

Under his third cause of action, plaintiff sought the sum of $203.33 as "earned vacation pay" whose entitlement allegedly accrued to him by reason of having accumulated twenty days earned vacation or overtime by the date of his purported suspension on October 16, 1953.

In its answer, defendant admitted practically all of the allegations of fact contained in plaintiff's petition, but took issue with plaintiff's conclusions and averments of legal consequences based thereon. As to plaintiff's first alleged cause of action for pay during the fifteen days of his alleged suspension, defendant both denied that said suspension was illegal, or ineffective, and in the alternative, alleged that, if there were any irregularities in it, defendant acquiesced in them; that he was not prejudiced thereby; and that he was guilty of laches in not perfecting a timely appeal therefrom.

As to plaintiff's second alleged cause of action, defendant denied that during the period of plaintiff's suspension, he held himself available for duty as a policeman, and averred that plaintiff's claim for salary during said period was properly denied.

As to plaintiff's third alleged cause of action, defendant re-plead the applicable portions of its answer to plaintiff's first and second causes of action, and admitted that at the time of his suspension on Oc-

tober 16, 1953, plaintiff had accumulated 20 days vacation time, but alleged that plaintiff's aforesaid claim for pay for that period was properly denied.

At the close of the trial, the trial court entered judgment for plaintiff in accord with certain written findings of fact and conclusions of law. It was therein concluded, as a matter of law, that plaintiff was not entitled to any portion of the salary he claimed under his first cause of action for the period of his initial fifteen days' suspension, because, under the defendant city's charter, the Chief of Police had authority to suspend him without pay for as long as thirty days, while the formal filing of charges was being contemplated. The court also concluded that plaintiff was not entitled, as a matter of right, to pay for the twenty days' vacation time he claimed to have earned.

After finding, as a matter of fact, that "had plaintiff continued in the active discharge of his duties from fifteen days after the date of his original suspension, he would have earned nine months and six days' salary, being the sum of $2,808, before the final order of his discharge, made on August 6th, 1954", the court, in his written "Conclusions of Law", stated:

"As to plaintiff's claim for salary from November 1st, 1953 to August 6th, 1954, a different situation exists. In the hearing of November, 1953, the plaintiff was found guilty and sicharged. However on appeal the District Court set that judgment aside. It was set aside not because of any errors in the admission or rejection of evidence, but on the ground that the action of the Commissioner was illegal and void from the beginning, because the Police Commissioner had signed the complaint against the plaintiff, Parrish, had acted as prosecuting witness, and had sat in judgment against him. Therefore, I look at the case as if no judgment at all was ever rendered against Parrish until August 6, 1954, the time of the second hearing. The judgment of November, 1953 was absolutely void. I am reminded of the words of Justice

Ramsey in the celebrated case of Pettis v. Johnston, 78 Okl. 277, 190 P. 681, at page 689.

" 'A void judgment * * * is a dead limb upon the judicial tree, * * * it can bear no fruit to the plaintiff, but is a constant menace to the defendant.'

"Under the charter the police Chief had authority to suspend without pay, but for a maximum of thirty days. Only the Board of Commissioners had authority to discharge, and they did not exercise that authority in a legal and valid manner until August 6th, 1954. The New York case of Lindquist (Application of Lindquist) [192 Misc. 906], 81 N.Y.S.2d 12, seems to support the City's contentions, but it was decided not by an *appellant* court, but by a trial court, and I am not disposed to follow it in view of other decisions.

"As to the case of Quick v. City of Fairview [144 Okl. 231], 291 P. 95, the *lagality* of the City Council sitting as a Judicial body was not attacked; while here, the very power of the Board, as constituted to try the plaintiff, was denied.

"I*u* City of Tulsa, v. Coker [181 Okl. 291], 73 P.2d 443, it was held: that where the discharge was illegal the policeman could recover his salary from the time he was available for duty and the date of a legal discharge.

"The merit of plaintiff's case is further emphasized by the holding in Adams v. City of Anadarko [202 Okl. 72], 210 P.2d 151; and the City of Tulsa v. Suttle [182 Okl. 283], 77 P.2d 104, cited by plaintiff's counsel.

"In accordance with the foregoing judgment is rendered in favor of plaintiff and against the City for the sum of $2,808.00 with legal interest from the date hereof."

After the overruling of its motion for new trial, the defendant perfected the present appeal from that portion of the trial court's judgment granting plaintiff re-

covery, as above shown, of a larger sum than he sought on his second alleged cause of action. Plaintiff has filed no cross appeal from that portion of the judgment adverse to him.

For reversal, defendant advances four propositions of error, but, as we have concluded that its argument under the second one reveals reversible error in the trial court's judgment, we deem it unnecessary to consider the remainder thereof.

From this argument arises the following question, which we deem decisive of the case, namely: Assuming, without deciding, that the district court's judgment of July 28, 1954, had the effect of nullifying the previous order discharging plaintiff, made by the Mayor and Board of Commissioners on November 10, 1953 (after that tribunal, on said date, had conducted the hearing on the charges against plaintiff, as aforesaid) did said judgment also nullify plaintiff's previous suspension of October 29, 1953?

Although, as hereinbefore shown, plaintiff contended that his previous, "purported" 15-day suspension by the Police Chief (of which he was notified October 16, 1953, as aforesaid) was invalid because never approved by the Police and Fire Commissioner (as he contended was necessary under Tit. 20, sec. 17, supra) he has never contended that his suspension of October 29, 1953, by the Police and Fire Commissioner was invalid, nor does he here specifically contend (as defendant denies) that such a police officer, as he then was, is entitled to pay while he is lawfully suspended from performing the duties of his position. This latter suspension was undisputedly effected by said Commissioner under Tit. 11, Sec. 25(c), supra, which authorizes him, as to a person (working under him) that has been charged, to suspend such person "from office or employment *pending the hearing*." If (as plaintiff does not deny) he was not entitled to pay while lawfully suspended, and if (as no one contradicts) the court judgment of July 28, 1954, did not purport to direct plaintiff's restoration to

active duty pending the rehearing, or new trial, before Tulsa's Mayor and Board of Commissioners (to which his discharge proceedings were remanded by said appellate court judgment) and said judgment in no manner wiped out plaintiff's suspension (as distinguished from discharge) pending a final, unappealed-from adjudication on the charges filed against him, then on what basis does plaintiff have a claim for services he did not perform, while suspended? None of the cases relied upon by the trial court in his above-quoted "Conclusions of Law", or cited by plaintiff to support its judgment, reaches or touches this decisive point. Nor have we been cited any provision of Tulsa's charter or ordinances to the effect that when an order of said City's Mayor and Board of Commissioners, discharging a policeman, is vacated, and the discharge proceedings are remanded to them for further action, or rehearing, such vacation and remand of itself nullifies the accused policeman's previous suspension. City of Tulsa v. Coker, supra, upon which the trial court seems to have primarily relied, did not involve a suspension. The plaintiff there apparently accepted his 5-day suspension without complaint, and sued only for the period beginning after its expiration and ending with his dismissal. Nor did the more recent case of Board of County Commissioners v. Litton, Okl., 315 P.2d 239, involve a preliminary suspension or an appellate remand of charges for retrial, as does this case. Therefore, assuming without deciding, that our holding there would apply the same to an *employed* or *appointed* policeman, as to an *elected* county commissioner, and that the district court's vacation, on July 28, 1954, of the previous order for plaintiff's discharge, restored him to the status of an employee of the city, was he not still a suspended employee? We think this question, and the foregoing, demonstrates that the issue in this case is no broader than the simple question, namely: What does Tit. 11, sec. 25(c), supra, mean by suspension "from * * * employment *pending the hearing*"? Could the City's legislative body, in enact-

# 570

ing this ordinance, possibly have intended that after a policeman has been suspended, as therein provided, and while charges on account of which he is sought to be removed or discharged, are still pending against him, such suspension, prior to final adjudication of the charges, terminates by operation of law and without any affirmative action by anyone to accomplish it? We think not. And, without any evidence presented in any form to show that such termination of such suspension is contemplated by the ordinance, we must hold to the contrary. In State ex rel. Clapp v. Peterson, 50 Minn. 239, 52 N.W. 655, the court said:

> "As is well said in State v. Police Com'rs, 16 Mo.App. 50: 'The suspension of an officer pending his trial for misconduct, so far as to tie his hands for the time being, seems to be universally accepted as a fair, salutary, and often necessary incident of the situation. His retention at such a time of all the advantages and opportunities afforded by official position may enable and encourage him, not only to persist in the rebellious practices complained of, but also to seriously embarrass his triors in their approaches to the ends of justice."

An action is usually regarded as "pending" from its commencement until final judgment is entered therein, and, if there is no such judgment until after a rehearing, then it is still pending during the rehearing. 70 C.J.S. p. 421, at Note 23; 1 C.J.S. Actions § 143, p. 1421, at Note 65. Thus to say "pending" the "hearing" or "trial" of a cause often connotes and includes: pending its rehearing, or retrial, also—if such is necessary to its final adjudication. And this is the meaning which we must conclude was intended for the words "pending the hearing" in Tit. 11, sec. 25(c), supra, in the absence of any evidence, or demonstration, to the contrary and in view of the conceivable consequences of a police officer's *acting* in his capacity as such, while charges, looking toward his removal, are still pending against him. This con-

clusion conforms, on principle to our interpretation of the expression "final judgment" in the Litton case, supra, wherein Litton's conviction was *reversed* by the appellate court, thus *terminating* the "hearing" of the charges against him. And, we think (to use the words of the court in the Application of Lindquist, 192 Misc. 906, 81 N.Y.S.2d 12, 16):

> "Any other construction would award to the dismissed employee, a substantial prize, consisting of his back pay in full, upon his succeeding in obtaining an order for a rehearing of the charges, because of technical error or deficiency, even though the charges might ultimately be sustained."

In accord with the foregoing, the judgment herein appealed from is hereby reversed, and this cause is remanded to the trial court with directions to vacate same, and enter judgment for the defendant.